# Memphis & Charleston Railroad Co. v. Martin, Admr.

*Action against Railroad Company by Administrator to recover Damages for Alleged Negligent Killing of his Intestate.*

1. *Action by administrator to recover damages for negligent killing of his intestate; sufficiency of complaint.*—In an action brought against a railroad company under the statute (Code of 1886, § 2589; Code of 1896, § 27), to recover damages for the alleged negligent killing of his intestate, a count in the complaint which avers that the striking, running over and killing of the plaintiff's intestate by the defendant was caused by the negligence, omission and carelessness of the defendant in that its servants in charge of its train of cars wholly failed and negligently omitted, as required by law, to blow the whistle or ring the bell of the engine while entering into or passing through an incorporated town, charges simple negligence, and sufficiently avers a cause of action.

2. *Same; same.*—In such an action a count in the complaint, which alleges that while the plaintiff's intestate was attempting to cross a public crossing in an incorporated town, she was run over and killed by the engine drawing a train on the defendant's track, that was being propelled and rushed by defendant's servants and employés over said public crossing at a wanton and reckless rate of speed, at a

[Memphis & Charleston Railroad Co. v. Martin, Admr.]

point and place where the defendant's servants and employés in charge of said train knew that persons were frequently crossing, in pursuance of their daily business, charges simple negligence, and sufficiently avers a cause of action.

3. *Same; same.*—In such an action, a count in the complaint, which avers that the defendant's servants and employés in charge of the engine drawing a heavy train of cars, propelled and rushed said engine and train in a wanton and reckless manner, and at a dangerous rate of speed when approaching the depot in a certain town, which was a regular station on the defendant's road, and that as the plaintiff's intestate, who was in no manner connected with the defendant's company, attempted to cross the defendant's track, at a public crossing in said town; at a place where persons were wont to cross in great numbers and frequently, she was struck and run over and killed by defendant's engine and train of cars, by reason of the reckless rate of speed at which the defendant's engine and train of cars was approaching and passing said depot and crossing on defendant's line of road, charges simple negligence, and sufficiently states a cause of action.

4. *Same; when wanton injury averred.*—In such an action, a count of the complaint, which avers that the defendant "in the management, conduct and running of one of its train of cars through the incorporated town or village of Madison, with reckless, unwarranted and dangerous rate of speed, did wantonly and recklessly strike and run over plaintiff's intestate at a public road crossing in said town," &c., sufficiently avers that the injury to the plaintiff's intestate was wantonly inflicted.

5. *Same; same.*—In an action against a railroad company by an administrator, to recover damages for the alleged negligent killing of his intestate, a count of the complaint which, in its first clause, charges that the injury was wantonly inflicted, and in the latter clause sets out the facts constituting the wanton conduct, from which facts it is evident that the conduct complained of amounted to no more than simple negligence, such count is demurrable for repugnancy and inconsistency.

6. *Willful injury; wanton negligence; definition thereof.*—To constitute willful injury, there must be a design, purpose or intent to do wrong and to inflict injury; while to constitute wanton negligence, there must be a consciousness on the part of the person, from his knowledge of existing circumstances and conditions, that his conduct will probably result in injury, and yet, with reckless indifference or disregard of the natural or probable consequences, he consciously and negligently, but without having the intent to injure, does the act or fails to do an act.

7. *Action for negligence against railroad company; admissibility of evidence as to location of house near crossing.*—In an action against a railroad company to recover damages for injuries received at a public crossing, evidence as to location of different houses near the cross-

[Memphis & Charleston Railroad Co. v. Martin, Admr.]

ing, and as to the location of the side track and cars standing there-
on, near the crossing, is admissible.

8. *Same; when evidence as to injured party's condition admissible.*
In an action by an administrator against a railroad company to re-
cover damages for the alleged negligent killing of his intestate,
where the defendant relied upon a declaration of the deceased, made
after she sustained the injury, that "She could not see how she had
been so careless," it is competent for the plaintiff to show that the
deceased did not recover consciousness after being struck by the
train.

9. *Same; when question as to wanton negligence should be referred to
the jury.*—In an action by the administrator against a railroad com-
pany, to recover damages for the alleged negligent killing of the
plaintiff's intestate, by being run over by one of the defendant's
trains at a public crossing, where the testimony as to the speed of the
train was in conflict, but it was shown that the accident occurred at
a public crossing, of the defendant's track in a town of 500 inhabi-
tants, where there was an average crossing by the people of one per-
son every ten minutes, or in great numbers, which facts were known
to the servants of the defendant who were in charge of the train, the
law does not declare that these facts constitute wanton negligence;
but the question as to whether they constitute wanton negligence is
one of law and of fact, and should be submitted to the jury for its
determination.

10. *Same; wanton negligence at a public crossing.*—The mere fact
that people frequently and in great numbers cross the track of a rail-
road company at a public crossing is not of itself sufficient to impute
knowledge to the servants of the railroad in charge of a passing
engine and train that likely or probably some person was, at the
time, on the track; and in an action to recover damages for injuries
sustained at a public crossing, by being run over by a train, if the
jury should find from the evidence that people crossed so frequently
and in such numbers that it was likely or probable that at the time
some person was on the track, and these facts were known to the
employés of the defendant, who were in charge of the train, then the
jury would be authorized to find that the conduct of the defendant's
servants or employés in running the train on defendant's track at a
dangerous rate of speed, without signals of approach, was such
reckless indifference to consequences as to constitute wanton neg-
ligence.

11. *Negligence in running railroad trains; failure of statute to regu-
late rate of speed does not prevent the existence of wanton negligence.*
While the general statutes of the State do not regulate the rate of
speed at which a railroad company shall run its trains, yet such fail-
ure does not authorize trains to be run at a wanton, reckless and
dangerous rate of speed over a public crossing of an incorporated
town or village, or at a point where people are known to cross and
re-cross the public crossing in great numbers and frequently; and

24

[Memphis & Charleston Railroad Co. v. Martin, Admr.]

instructions to the jury which assert that there can be no wanton negligence in the absence of an ordinance or statute regulating the speed of trains, is erroneous.

12. *Same; assumption of risk by party injured.*—Where a person wishing to cross the track of a railroad at a public crossing sees a train approaching and for himself measures the distance and time it will take to cross, and acting upon his own judgment makes an effort to cross the track in front of an approaching train, such person assumes the risk of the undertaking, and if injured, can not hold the railroad responsible, unless his intention was apparent to the employés of the railroad company operating the train, and after such perilous intention and conduct became apparent, the injury could have been avoided by the exercise on the part of such employés of due care and reasonable diligence.

13. *Same; contributory negligence.*—In an action by an administrator against a railroad company to recover damages for the alleged negligent killing of the plaintiff's intestate, where it is shown that the injuries resulting in death were inflicted at a public crossing, a charge asserts a correct proposition and should be given, which instructs the jury that it was the duty of the deceased "to wait for the train to pass before she attempted to cross, and if she could by the exercise of due diligence have discovered the approach of defendant's train, knowing of its approach, or if by the exercise of due diligence she could have discovered its approach, she would be the author of her own misfortune and could not recover in this action, unless the jury should believe from the evidence that upon the manifestation of Mrs. Martin's peril those who controlled defendant's train failed to use due diligence to prevent the injury, or that they wantonly or intentionally injured her."

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellee as administrator of Nancy Martin, deceased, against the appellant, the Memphis & Charleston Railroad Company, to recover damages for the alleged negligent killing by the defendant of the plaintiff's intestate. The complaint as amended contained five counts. These counts, after alleging the operation by the defendant of a railroad in the State of Alabama, and the fact that the plaintiff's intestate was run over and killed by one of the defendant's engines, while she was crossing the track of the defendant's road at a public road crossing, within the limits of the town of Madison, contained the following averments of negligence : 1. "And the plaintiff avers that the striking, running over and killing of his intestate by the defendant, was caused by the negligence,

omission and carelessness of the defendant in this : That the servants of the defendant in charge of defendant's said train of cars, wholly failed and negligently omitted, as required by law, to blow the whistle or ring the bell of the engine while entering into, moving within, or passing through the village or town of Madison, and by reason of said negligence, omission and carelessness, on the part of the servants of the defendant, and without fault of plaintiff's intestate, plaintiff's intestate was struck and run over by one of defendant's engines and died from the injuries received."

2.   "Said defendant company did, on the 8th day of April, 1891, in the management, conduct and running of one of its freight trains by its servants, employés and operatives, wantonly and recklessly propel and rush one of its engines drawing a long and heavy freight train on its track over the public crossing or passway where people are wont to cross and recross with great frequency and in great numbers, within the limits of the incorporated town or village of Madison in the county of Madison, State of Alabama, at a rate of speed of not less than twenty-five miles per hour, or about twenty-five feet per second, by which and from which reckless, wanton and dangerous conduct of defendants's servants, employés and operatives in propelling said engine and train of freight cars at that high and dangerous rate of speed, plaintiff's intestate, who had no connection with defendant's company as an employé or passenger, was run over and killed by defendant's engine and train of cars, while she was crossing the public road crossing or passway over defendant's track, the same being within the limits of the incorporated town or village of Madison, county of Madison, State of Alabama, without fault or proper caution on the part of plaintiff's intestate."

3.   "Plaintiff's intestate attempted to cross defendant's track at the public crossing or passway in the incorporated town or village of Madison where persons crossed and recrossed in great numbers, and while so attempting to cross defendant's track, plaintiff's intestate was struck, run over and killed by an engine drawing a heavy and long train of freight cars on defendant's track, that was being propelled and rushed by the servants, employés and operatives of defendant's company over the public crossing or passway in the limits of the

incorporated town of Madison at a wanton and reckless rate of speed of not less than twenty-five miles per hour, at a point and place where defendant's employès and servants in charge of said train knew that persons were frequently crossing in the pursuit of their daily business which caused the injury proximately and directly to plaintiff's intestate, from which she died."

4. "That on the 8th day of April, 1891, the servants, employès and operatives of defendant company in charge of an engine drawing a heavy train of freight cars, propelled and rushed said engine and train of freight cars over defendant's track in a wanton and reckless manner and at a rate of speed of not less than twenty-five miles an hour on approaching the depot in the town of Madison, county of Madison, State of Alabama, which is a regular station or stopping place on defendant's line of road, and plaintiff avers that his intestate, who was in no manner connected with defendant's company as employé, passenger, or otherwise, approached the track of the defendant where the same crosses the public crossing or passway in the incorporated town or village of Madison, in the county of Madison, State of Alabama, and where persons are wont to cross and recross in great numbers and frequently, which said public crossing or passway is about forty feet from the platform of defendant's depot, and, after stopping to look and hear for an approaching train, and not hearing or seeing a train, plaintiff's intestate attempted to cross defendant's track, at said point, and while so attempting to cross and making every effort to extricate herself from her perilous position, plaintiff's intestate was struck and run over and killed by defendant's engine and train of cars, by reason of the reckless rate of speed with which the engine and train of cars was approaching and passing said depot on said defendant's line of road."

The fifth count of the complaint was as follows: "5th. And the plaintiff further claims of the defendant the sum of thirty thousand dollars for that said defendant on the 8th day of April, 1891, while engaged by its agents, employès and servants in operating and running its line of road, did negligently, carelessly, recklessly and wantonly run over and kill plaintiff's intestate with one of its engines, when running at a rate of speed of not less than twenty-five miles an hour, while

plaintiff's intestate, who had no relation or connection with defendant's company and without fault on her part, was crossing the defendant's track or road at a public crossing or passway where people were wont to cross frequently and in great numbers in the limits of the incorporated town or village of Madison, in the county of Madison, State of Alabama, which reckless and wanton rate of speed of defendant's engine and train of cars was alone the cause of the death of plaintiff's intestate."

The defendant demurred to the second count of the complaint upon the following grounds : 1st. It fails to show or allege any facts constituting wanton negligence. 2d. It shows on its face that plaintiff's intestate was guilty of contributory negligence. 3d. It shows that plaintiff's intestate was a trespasser on defendant's track, and fails to show that defendant's employés failed to use all means within their power to stop said train after her peril was discovered, or ought to have been discovered, and fails to show that the presence of said intestate on the track or crossing was known to the defendant's employés in charge of the train ; or that such employés had notice or knowledge that plaintiff's intestate was or might attempt to cross said track in front of the rapidly moving train. 4th. "Because no rate of speed, alone, however reckless, unwarranted or dangerous it may be, constitutes negligence *per se*, nor such wantonness as is the legal equivalent of willful or intentional wrong, unless there is an ordinance regulating such speed, and unless such speed is maintained over a crossing in a thickly populated district, neither of which facts is alleged in said count."

To the third count the defendant demurred upon the following ground : It shows that the intestate was guilty of negligence which proximately contributed to her injuries.

To the 5th count the defendant demurred upon the following grounds : "1st. Because said count seeks to recover of this defendant for its alleged wanton and recklessly negligent conduct, and fails to allege or show any facts constituting wanton and recklessly negligent conduct. 2d. Because said count seeks to hold defendant liable for its alleged wanton and recklessly negligent conduct, and alleges as grounds for such recovery facts

or omissions of duty which constitute simple negligence only. 3d. Because said count is repugnant and inconsistent in this : in one portion it charges this defendant with omission of statutory duties and with running said train at a reckless, unwarranted and dangerous rate of speed (which omission of duty and rate of speed constitute simple negligence only), and yet in another portion of said count plaintiff denominates said omission of duty and rate of speed 'wanton and recklessly negligent conduct on the part of defendant.' 4th. Because said count joins an action for simple negligence only with an action for wanton negligence." These demurrers were each overruled, and the plaintiff separately excepted.

The defendant pleaded the general issue, and the following special pleas : "2. For further plea and answer to counts numbered 1, 3, 4 and 5, and to each of said counts separately, defendant says, that plaintiff's intestate was herself guilty of negligence, which proximately contributed to cause her death, in this, that she attempted to cross said track in front of said moving train, without stopping to look or listen for the approach of trains on said track, and by reason of her own negligence in this respect was struck and killed.

"3. For further plea and answer to counts numbered 1, 3, 4 and 5 and to each of said counts, separately, [defendant says that], before attempting to cross the track of this defendant at said road crossing at the time mentioned in said complaint [plaintiff's intestate] heard or saw the train of this defendant coming towards her and towards said crossing, and, notwithstanding this, attempted to cross said track in front of said moving train, and by her own negligence in this respect proximately contributed to produce her own death.

"4. For further plea and answer to counts numbered 1, 2, 3, 4 and 5, and to each of said counts, separately, defendant says that plaintiff's intestate was herself guilty of negligence so gross and reckless as to be the equivalent of willful injury to herself, in this, that she attempted to cross said track in front of defendant's moving train, well knowing that said train was approaching and in such a close proximity that no preventive on the part of the employés or servants in charge thereof could have prevented the injury after the peril

of plaintiff's intestate became known to them, or after she stepped on the track on which. said train was moving.

"5. For further answer to counts numbered 1, 2, 3, 4 and 5, and to each of said counts separately, defendant says, that plaintiff's intestate voluntarily left a place of safety between the side track and main track of defendant at said crossing, and from which position between said tracks her view of the approaching train was unobstructed, and well knowing that defendant's train was rapidly approaching on said main track, she measured the distance and took the chances, and attempted to cross said main track immediately in front of said rapidly moving train, and in such close proximity thereto that no preventive efforts on the part of the employés of defendant in charge of said train could have prevented injury to her, and by her own gross and reckless negligence and wanton conduct in this regard proximately contributed to produce the injury and death complained of."

The plaintiff demurred to the defendant's pleas numbered 4 and 5, which demurrers were sustained, and the defendant duly excepted. The plaintiff demurred to pleas numbers 2 and 3, as answers to the second and fifth counts of the complaint, upon the ground that they presented no legal defense to said counts, and this demurrer was sustained. Issue was then joined upon the plea of the general issue, and the second and third pleas as answers to the 1st, 3d and 4th counts.

On the trial of the cause, the evidence showed the following facts: The defendant's line of railroad ran east and west through the incorporated town of Madison, in the county of Madison, Alabama. The population of Madison on or about April 8, 1891, was about 500. The line of the defendant's railway divided the town; and stores, residences and other houses were on the north and south side of the railroad track. The public road crossing and passway, which was the main thoroughfare of the town of Madison, crossed the track at right angles. The post-office and calaboose of the town were on the north side of the railroad track and a short distance east of the public crossing. From the calaboose and post-office, leading down to the side track, which was north of the main track, there was a growth of oak trees with low and outspreading branches. Mrs. Martin's

residence was on the south side of the track. On the afternoon of April 8, 1891, Mrs. Martin had been visiting some friends who lived north of the railroad crossing, west of the public road, and but a short distance from the railroad track. On returning to her residence, which was south of the railroad crossing, and while crossing the defendant's track on the public crossing and passway, which was used as a main thoroughfare of the town, she was run over and killed by an engine drawing twenty-eight freight cars on defendant's main line of track; that the train that struck Mrs. Martin was coming from the east going westward; that Mrs. Martin was not standing on or walking along the railroad track, but was crossing it from the north side to the south side. Two box cars, left by defendant's employés were standing on the side track, which was north of the main track and east of the public road crossing where the accident occurred.

The evidence for the plaintiff tended to show that pedestrians and vehicles crossed and re-crossed the railroad track at the public crossing in the town of Madison where Mrs. Martin was killed, frequently and in large numbers, and at all times during the day; that the public crossing, where the accident occurred was the main thoroughfare of the town; that the employés of defendant in charge of the train that killed Mrs. Martin had frequently passed and re-passed the public crossing and were familiar with the same, and knew that people were accustomed to use it as the principal thoroughfare of the town. That the whistle of the engine did not blow or the bell ring at short intervals on entering into, while moving within, or passing through the town, nor did the whistle blow or the bell ring before the engine reached the public crossing. That the growth of trees, the post office, calaboose and box cars on the side track obscured the view of Mrs. Martin of the train coming from the east, as she came down the public road from the residence where she had been visiting; to cross the track. That Mrs. Martin stopped and looked up and down the track just before she reached the main crossing; that the train was a through freight and passed over the public crossing at the rate of speed of from 20 to 35 miles an hour, and that Mrs. Martin used vigorous efforts to extricate herself from

her perilous position when she became apprised of it. It was further shown that the train ran from 350 to 600 yards past the public crossing after it struck Mrs. Martin before it could be stopped.

The testimony for the defendant tended to show that the train which ran over and killed the plaintiff's intestate was running at the rate of from 8 to 10 miles an hour; that the track from the crossing east and west was straight for a mile or more, that for one-quarter of a mile before reaching the crossing the track was down grade; that there was a distance of 8½ feet between the main track and the side track, which was north of the main track; that a person standing between the side track and the main track and looking east could see a train coming for more than a quarter of a mile. That the train which caused the accident was making a great deal of noise; that the engineer did not see the plaintiff's intestate until within about 50 feet from her; that she was walking towards the main track, and that she did not stop and look either up or down the track; that as soon as the engineer saw that she was going to try to cross, he reversed the engine, called for brakes, and did all in his power to stop the train and avert the injury. That the engine was in good condition, was well equipped, and that it was impossible for the train to have been stopped by the use of all means known to engineers, after the engineer saw that Mrs. Martin was going to cross the track.

Upon the examination of the practicing physician who attended Mrs. Martin after her injury, and after he had testified that she lived three days and died from the injuries received, he was asked this question: "Did Mrs. Martin ever regain consciousness before her death?" The defendant objected to this question, because it called for illegal, incompetent and immaterial evidence, and duly excepted to the court's overruling his objection. The witness answered: "No, I don't think she did. She may have regained semi-consciousness." After one of the witnesses had testified that the crossing where the accident occurred was the principal thoroughfare of the town, he was asked the following question: "Tell the jury whether that crossing was frequently used by the people." The defendant objected to this question, upon the grounds that it was leading, that it called for

the opinion and conclusion of the witness, and for illegal and immaterial evidence. The court overruled this objection, and the defendant duly excepted. The witness answered: "It was frequently used and was the principal crossing by the footway." The defendant moved to exclude this answer, upon the grounds interposed to the question, and duly excepted to the court's overruling his motion. Similar questions were asked different witnesses by the plaintiff, and were answered by the witness testifying that the crossing was "frequently" used; that the people crossed there in "great numbers." To each of these questions the defendant separately objected, upon the ground that they called for the opinion of the witness and for illegal and immaterial evidence. Each of said objections was overruled, and the defendant separately excepted.

Upon the examination of the plaintiff as a witness, among other things, he testified as follows: "Sometime after the accident, when the trees were in leaf, but I don't remember exactly when it was, nor how long after the accident occurred, I walked along the road from Dr. Burton's to see if I could see a train coming from the east, and there is a cut in the railroad, and after that, going west, there is a fill or embankment, and this cut and embankment obstructed my view until I got some distance from the house, and then the trees obstructed the view until I got down near the post-office, the size of which was about 16 x 18 feet, and that would obstruct the view until I got to the calaboose, and that would obstruct the view, and then the timber would be there, and those cars on the side track. No train was coming in at that time." The defendant objected to and moved to exclude said testimony of said witness on the ground that the time when said experiment was made was not shown, and because the evidence was incompetent, irrelevant and illegal. The court overruled said objection, and the defendant duly excepted.

Upon the introduction of all the evidence, the court in its general charge, among other things, instructed the jury as follows: "If you believe from the evidence that Mrs. Martin was struck by defendant's train, while she was crossing the track at a public road crossing in the town of Madison, where people were wont to cross frequently and in numbers, or that said public road was

a crowded thoroughfare, or in a populous district, and that the engineer of said train knew the nature of said crossing, or had been running past said crossing on defendant's road for a sufficient length of time to be chargeable with knowledge thereof, and if you further believe from the evidence that the train that struck Mrs. Martin was running at a high and dangerous and reckless rate of speed, and that the trainmen failed to give notice of the train's approach to said crossing, by blowing the whistle or ringing the bell at intervals while they were approaching said crossing, then you would be authorized to find the defendant's employès were guilty of wantonness or recklessness, notwithstanding you may also believe from the evidence that there was negligence on Mrs. Martin's part and no fault on the part of defendant's employès after they discovered her peril." The defendant duly excepted to this portion of the court's general charge.

At the request of the plaintiff, the court gave to the jury among others, the following written charges : (5.) "If the jury believe from all the evidence that Mrs. Martin was crossing the railroad track at a public crossing in the incorporated town of Madison, and they further believe from all the evidence that people were wont to cross and recross this public crossing in numbers and with frequency, and she was struck, run over and injured, from which injury she died, by an engine and train of cars on defendant's track, which was being propelled and rushed by defendant's employès and servants at a dangerous, reckless, intentional and wanton rate of speed without signals of approach, then the defendant railroad company would be liable for the injuries she received, notwithstanding the jury may believe that there was negligence on Mrs. Martin's part." (7.) "The general statutes of our State do not regulate the rate of speed that a railroad company shall run its cars, yet the failure of the law to regulate the rate of speed, does not authorize a railroad company to run its trains at a wanton, reckless and dangerous rate of speed over a public crossing in an incorporated town or village, a point where the people cross and recross the public crossing in numbers, and frequently." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to

give among others, each of the following charges requested by it: (1.) "If the jury believe the evidence, they must find a verdict for the defendant." (3.) "Because of the character and momentum of the defendant's train, the law would not require it to stop its train and give precedence to Mrs. Martin, who was on foot, to make the crossing first. It was the duty of Mrs. Martin to wait for the train to pass before she attempted to cross, and if she could, by the exercise of due diligence, have discovered the approach of defendant's train, and if she attempted to cross in front of defendant's train, knowing of its approach, or if by the exercise of due diligence she could have discovered its approach, she would be the author of her own misfortune and could not recover in this action, unless the jury should believe from the evidence that upon the manifestation of Mrs. Martin's peril those who controlled defendant's train failed to use due diligence to prevent the injury, or that they wantonly or intentionally injured her." (6.) "In order to charge the servants of defendant in control of said train with wanton or intentional negligence in running said train on said crossing and through the town of Madison at a high rate of speed without signals, the proof must show that there was an ordinance of said town regulating the speed of trains through it, and must show that the servants of defendant knew that the public were wont to pass said crossing with great frequency and in great numbers. Unless the proof shows that there was such an ordinance, and that the servants knew that the public were accustomed to use said crossing with great frequency and in great numbers, said servants could not be guilty of wanton or intentional negligence in running said train on said crossing at a high rate of speed without signals." (9.) "Neither the placing of cars on the side track as shown by the evidence, nor a failure to ring the bell of the engine, or blow the whistle, nor the speed of the train, before the peril of Mrs. Martin became manifest, under the evidence, is evidence of wanton, reckless or intentional misconduct on the part of defendant's servants." (10.) "If the jury believe from the evidence that the manifestation of the peril of Mrs. Martin and her being struck by the engine was so close, in point of time, that the train could not have been stopped in time to have avoided

[Memphis & Charleston Railroad Co. v. Martin, Admr.]

the injury to her, then the defendant's agents in charge of the train can not be deemed guilty of wanton, reckless or intentional misconduct." (17.) "If the jury believe from the evidence that Mrs. Martin approached the railroad crossing, wishing to cross, and that she saw or heard the train approaching, and that she for herself measured the distance and time it would take to cross, and, acting upon her own judgment, undertook to cross, then I charge you that she assumed the risk, and her administrator can not hold the railroad company responsible, unless Mrs. Martin's intention was apparent to the employés of defendant operating the train, and, after her perilous intention and conduct became apparent, by the exercise of due care and diligence the injury could have been avoided."

There were verdict and judgment for the plaintiff, assessing his damages at $10,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

HUMES, SHEFFEY & SPEAKE, for appellant.

WILLIAM RICHARDSON, contra, cited L. & N. R. R. Co. v. Webb, 97 Ala. 314; Ga. Pac. Railway Co. v. Lee, 92 Ala. 267; L. & N. R. R. Co. v. Webb, 90 Ala. 193; Kellogg v. N. Y. C. R. R. Co., 79 N. Y. 72.

COLEMAN, J.—The plaintiff sued under section 2589 of the Code of 1886 to recover damages for personal injuries inflicted upon his intestate which caused her death.

The first, third and fourth counts charge simple negligence and sufficiently aver a cause of action. The second count avers that defendant "in the management, conduct and running of one of its freight trains, through the incorporated town or village of Madison, with reckless, unwarranted and dangerous rate of speed, did wantonly and recklessly strike and run over plaintiff's intestate at a public road crossing in said town," etc. Under the uniform rulings of this court, this count sufficiently avers that the injury to intestate was wantonly inflicted.—South & North Ala. R. R. Co. v. Thompson, 62 Ala. 494; Chewning v. Ensley Railway Co., 103 Ala. 24; Jones v. Darden, 90 Ala. 372; Oxford Lake Line

v: *Stedham*, 101 Ala. 376. The fifth count of the complainant is confused and inconsistent. While the first clause of the count charges that the injury was wantonly inflicted, the latter clause sets out the facts constituting the wanton conduct. The whole count must be construed together, and when thus construed, it is evident that the facts relied upon to show wantonness, amount to no more than simple negligence. The demurrer to the 5th count pointed out its defects, and ought to have been sustained. Again, if this count had not been demurred to, applying the rule, that the pleading must be construed most strongly against the pleader until judgment, we would be compelled to hold that the fifth count averred only simple negligence; and consequently the plea of contributory negligence to the fifth count, presented a good defense, and the demurrer to this plea ought to have been overruled. The mere intentional omission to perform a duty or the intentional doing of an act contrary to duty, although such conduct be culpable and result in injury, without further averment, falls very far short of showing that the injury was intentionally or wantonly inflicted. Unless there was a purpose to inflict the injury, it can not be said to have been intentionally done; and unless an act is done, or omitted to be done, under circumstances and conditions known to the person, that his conduct is likely to, or probably will result in injury, and through reckless indifference to consequences, he consciously and intentionally does a wrongful act, or omits an act, the injury can not be said to be wantonly inflicted. These principles have been frequently declared by this court.—*L. & N. R. R. Co. v. Anchors*, 114 Ala. 492; *Birmingham Railway & Electric Co. v. Bowers*, 110 Ala. 328; *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262; *Stringer v. Ala. Min. Railroad Co.*, 99 Ala. 397.

We find no error prejudicial to the appellant in the admission of the evidence as to the location of the different houses near the crossing, nor of the side track and the cars that were standing on it near the crossing. We presume this evidence was admitted for the purpose of showing that these obstructions increased the obligation of the defendant, to approach the crossing with more care, and also for the purpose of showing that the view of deceased was interrupted by these obstructions.

If these facts imposed additional care upon the defendant, they in like manner required of deceased before venturing to cross that she should have been the more careful to ascertain whether with safety she could cross the track.—*H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560.

The defendant relied upon a declaration of the deceased made after she sustained the injury that "she could not see how she had been so careless." We are of opinion it was competent to show that deceased did not recover consciousness after being struck by the train.

To sustain the second count of the complaint, that which charged the defendant with having wantonly ran the engine against the deceased, the plaintiff proved that the place where deceased was struck, was a public crossing in the town of Madison having a population of about five hundred people, that this crossing was used more than any other in the town, and that the average crossing during the day was about one person in every ten minutes, and according to some of the testimony, people crossed in "great numbers." A witness could be required on cross-examination to define what was intended by the term "frequently" and in "great numbers." The speed of the train at the time, according to the different witnesses, ranged from eight miles to thirty miles per hour. Assuming that the train was running at the speed of thirty miles an hour, over a public crossing of the track in a town of five hundred inhabitants, and that there was an average crossing by the people of one person every ten minutes, or in great numbers, facts known to the servants in charge of the train, does the law declare that these facts do not constitute wanton negligence, or is the question as to whether these facts constitute wanton negligence one of law and fact, properly referable to a jury for its determination? The decisions of this State bearing upon the question, were collected and reviewed in the case of *L. & N. R. R. Co. v. Webb*, 97 Ala. 308, and in conclusion we used the following language: "As we have said in *Arnold's Case, supra*, 'precautionary requirements increase in the ratio that danger becomes more threatening;' and in *Sampson's Case* and *Meador's Case, supra*, 'the duty of care and vigilance becomes proportionately increased according to the less or greater likelihood that there are

persons on the track at the time and place;' and in *Lee's Case, supra,* 'reckless indifference will be imputed to those who run a train at a high rate of speed without signals of approach when trainmen have reason to believe there are persons in exposed positions as over unguarded crossings in a populous district of a city, or where the public are wont to pass with such frequency and in such numbers, facts known to those in charge of the train," etc.

"The public is entitled to the right of way over public crossings, as much so, as the railroad itself. Persons in the proper exercise of this right are in no sense trespassers, and while it is incumbent on them to exercise due care, by looking and listening for approaching trains, it is equally the duty of those operating trains over such places to exercise due care to prevent injury. If in utter disregard of this duty, and of the many restrictions imposed by the statute and city ordinances enacted to protect life and property at such places, those in charge should rush an engine voluntarily and unnecessarily over a public crossing, when it is likely, at the time persons are exercising their right to cross the track as a public highway, a condition or fact, on account of its location in a populous city, and the extent of its use as such, would authorize a jury to infer was known to defendant, with such reckless speed that due care in keeping a proper lookout for persons who might be upon the track could not be had by those operating the train, or if such persons should be discovered upon the track, could not possibly stop or slacken its speed in time to avoid inflicting injury, and injury did result from such negligence, can it be said as a conclusion of law, upon any safe rule, that such reckless conduct and disregard of consequences, is not the equivalent of willfulness or wantonness?—*Shumacher v. St. L. & S. F. R. Co.,* (Ark.) 39 Fed. Rep. 174.

"We are of opinion that a train may be run under some circumstances over a public crossing in a populous city at such speed as to amount to that recklessness which is the equivalent of wantonness and willfulness.

"The court can not, as a matter of law, from the very character of the question, pronounce precisely and infallibly the precise rate of speed at which a train may be run over such a crossing under the circumstances

here testified to without being guilty of culpable negligence."

In the *Webb Case, supra,* we held, that under the circumstances "it was proper and necessary to submit the question of the degree of negligence to the determination of the jury," and though the evidence in the present case is not altogether the same, the facts are such as to bring the case within the influence of the principles therein declared and the authorities cited. Whether or not, therefore, the defendant was guilty of wanton injury under the facts of the case, should have been referred to the jury for its determination.

It is earnestly contended by appellant that such a rule, will greatly impede commercial transactions, and directly impair the efficiency of transportation by railroads. The public and railroads have their respective rights and are under mutual obligations at public crossings and in the use of them. The doctrine of *sic utere tuo ut alienum non laedas,* applies alike to persons and corporations. The value of human life can not be overbalanced by any pecuniary or public interest. Our duty is simply to declare the law.

Tested by the foregoing principles of law which we have declared to be correct, it will be seen the court erred in the instruction given to the jury *ex mero motu,* and some of those given at the request of the plaintiff.

This court has never held, that the mere crossing of the track of a railroad at a public crossing, by people frequently and in numbers, was sufficient to impute knowledge to those in charge of the engine and train, "that likely or probably" some person at the time was on the track. "Frequently and in numbers" are terms too indefinite to justify the legal conclusion deduced therefrom by the court. The rule is, that if the jury should find from the evidence, that people crossed so frequently and in such numbers, (facts known to those in charge of the train) that it was likely or probable, that at the time, some person would be on the track, then the jury would be authorized to find that the conduct of the defendant's servants was wanton and with reckless indifference to consequences. The oral charge of the court and charge No. 5 given at plaintiff's request, failed to draw the distinction here pointed out, and these charges ignored other material evidence, which

will be referred to when we consider the charges requested by the defendant.

Charge 7 given for plaintiff asserts a correct proposition of law. We refer to this charge specially, because this conclusion disposes of charge 6 requested by the defendant, and others which asserted that there could be no wanton negligence, in the absence of an ordinance or statute regulating the speed of trains.

We are of opinion that charge 17 requested by the defendant, asserted a correct proposition of law, and should have been given. We find no conflict in the evidence, that after the deceased crossed the side track and before reaching the main track upon which the train was approaching, there was nothing to obstruct the view for some distance. There was evidence also tending to show that deceased, just before stepping on the main track, halted and looked towards the train, and that the train at that time was in sight or within hearing and approaching, and that she started to run across the track. These facts were sufficiently predicated in the charge. In the case of *Highland Ave. & Belt R. R. Co. v. Sampson*, 91 Ala. 564, we used the following language : "A person wishing to cross the track of a railroad at a public crossing, or any place where trains are not required to stop, and seeing a train approaching, and who for himself measures the distance and time it will take to cross, and acting upon his own judgment, undertakes to cross, assumes the risk, and if injured, cannot hold the railroad responsible, unless his intention was apparent to the employès of defendant operating the train, and after such perilous intention and conduct became apparent, by the exercise of due care and reasonable diligence, the injury could have been avoided." The same principle was asserted in the case of *Ga. Pac. R'y Co. v. Lee*, 92 Ala. 272, and in *Glass v. M. & C. R. R. Co.*, 94 Ala. 590. To the same effect are the following cases : *Railroad v. Houston*, 95 U. S. 697; *Schofield v. Railroad*, 114 U. S. 614; *Gothard v. Ala. Gr. So. R. R. Co.*, 67 Ala. 114. A majority of the court, however, are of opinion that the facts predicated do not answer the second count of the complaint.

In the opinion of the writer it was not intended by anything said in the *Markee Case*, 103 Ala. 160, to relieve a person from the consequences of such a danger-

ous act, voluntarily and knowingly assumed, as the attempt to cross a railroad track, in dangerous proximity to and in front of a rapidly approaching train, there being no purpose or intent to inflict injury. If susceptible of other construction, it ought to be considered so modified as to conform to the rule herein declared.

Charge 3 requested by the defendant should have been given. This charge in effect is the same as that approved in the case of *Gothard v. Ala. Gr. So. R. R. Co.*, *supra*.

Charges numbered 9 and 10 requested by defendant, were approved in the case of *Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 264, 272, and abstractly considered, assert correct propositions of law. They were applicable to the facts in the *Lee Case, supra*. The injury there was at a public road crossing, but not in a town or populous district, and there was no question of a wanton injury arising from the character of the public crossing. These charges were calculated to mislead the jury in the present case, and the court committed no reversible error in refusing them. Some of the refused charges requested by defendant, were misleading, and others invaded the province of the jury.

The principles of law declared cover the case and are deemed sufficient for another trial. The court is in harmony except upon the one question, and that is as to the giving of charge No. 17.

Reversed and remanded.