[Louisville & Nashville Railroad Co. v. Orr, Adm'r.]

# Louisville & Nashville Railroad Co. v. Orr, Adm'r.

*Action for Damages for Negligence Causing Death.*

1. *Contributory negligence; when plea bad.*—A plea of contributory negligence is bad when directed to the complaint as a whole, if the complaint in one count charges a killing by willfulness and wantonness.

2. *When complaint charges only simple negligence.*—In a suit brought to recover damages from a railroad company for the killing of the plaintiff's intestate, a count of the complaint which alleges that the train by which the killing was done was, at the time, running at thirty-five or forty miles an hour, through an incorporated city and across a public street, along which persons in large numbers were continually passing, and that no whistle was sounded or other danger signal given, and that the death of the intestate was the result of the carelessness, negligence and recklessness of the defendant, charges only simple negligence.

3. *Same.*—A count in a complaint by an administrator for damages for killing which ascribes the death of his intestate to negligence, carelessness and wantonness really avers in the alternative either negligence or wantonness, and construing it against the pleader it must be held to charge negligence only, since an act cannot be done through inadvertence, involving of course the absence of all mental action in respect of it, and and at the same time be done wantonly, that is with a sense of what is passing accompanied by a conscious disregard of consequences implying a willingness to inflict injury.

4. *Gross negligence and reckless carelessness; what their use may involve.*—Gross negligence though inaccurate as a term to express wantonness or reckless indifference to probable consequences, has been directly recognized as involving more than negligence in any degree, and when found in connection and conjunction with the words willfulness and wantonness is to be taken if not as expressing the same idea, at least as not repugnant to them. And so in like connection with the phrase reckless carelessness. Hence, a count which ascribes a death to willful acts, gross negligence, reckless carelessness and wantonness is held to charge the defendant with willfulness and wantonness in doing the act which caused the death.

| | |
|---|---|
| 121 | 489 |
| f122 | 482 |
| 121 | 489 |
| 123 | 244 |
| 124 | 600 |
| 125 | 365 |
| 121 | 489 |
| 132 | 515 |
| 133 | 226 |
| 121 | 489 |
| e134 | 266 |
| 121 | 489 |
| 136 | 239 |
| 136 | 595 |
| 136 | 596 |
| 121 | 489 |
| 140 | 237 |
| 121 | 489 |
| 141 | 229 |
| 141 | 331 |
| 142 | 677 |
| 121 | 489 |
| 144 | 614 |

5. *When demurrer to replication only a general demurrer.*—If a replication, interposed to a plea of contributory negligence, averred that the deceased for whose death the suit was brought, was on the track of the railroad when killed, in the effort to save a child from injury, a demurrer to it which does not point out that the attempt was rash and reckless in the judgment of a prudent person, is only a general demurrer and was properly overruled.

6. *Plea setting up wanton exposure to danger by plaintiff when bad.*—When the complaint charges a willful and wanton killing by a railroad company, and a plea attempts to set up wantonness and deliberate exposure of herself to.danger on the part of the person killed, a demurrer to the plea is properly sustained, since even consent can give no right to kill.

7. *Negligence; attempt to save life not; exception to this rule; what is not exception.*—Where one risks his life and loses it in an effort to save the life of another or to protect another who is exposed to a sudden peril, such risk and exposure for such purpose is not negligence, unless the effort is made under such circumstances as to constitute recklessness and rashness in the judgment of a man of ordinary prudence; and it cannot be said to be a rash or a reckless act on the part of the rescuer, if the appearance justifies a belief that he could effect a rescue, even though he should have reason to believe, and in fact, did believe that he might fail and receive grievous injuries himself.

8. *Pleading; when court should put a stop to.*—Where a defendant in a suit for damages for negligent or willful killing after much unnecessary special pleading, offered a paper which set up facts plainly provable under the general issue, the court properly refused to permit such paper to be filed.

9. *When the guess of a witness admissible.*—Where it is apparent that the "guess" of a witness is his judgment or opinion it is not error to admit it.

10. *When proof of equipment of train with brakes admissible.*—It is proper for a plaintiff suing for injury done by a passing train to show that the train was equipped with brakes throughout, when there is evidence tending to show that a very slight diminution of speed would have conserved the safety of the party injured.

11. *Negligence and wantonness; when these questions should go to the jury.*—Where in a suit for damages resulting as averred from a killing by negligence and also by willfulness, the evidence tends to show that the train by which the killing was done was running at the time at the speed of forty miles an hour, through a populous part of a town of considerable

[Louisville & Nashville Railroad Co. v. Orr, Adm'r.]

size, built close upon, on and along each side of the track
and across one of its public streets along which and across the
track there was continual travel; and further that at the time
of the killing there was the absence of danger signals of ap-
proach of the train, and failure on the part of the engineer
to blow for brakes or to do anything to check the speed of his
train; and that a slight check of speed would have conserved
the safety of the person killed; the question of negligence
and also of wantonness should be submitted to the jury,
although the person killed had opportunity to see the ap-
proaching train before she got on the track, if there is also
evidence tending to show that she was on the track in the
effort to save a child from death or injury.

12.  *Charge ignoring replication; when bad.*—A charge which re-
quires a verdict for the defendant on the ground of contribu-
tory negligence of plaintiff's intestate, but which misleads
the jury from a consideration of a replication, which the evi-
dence tends to prove, that the intestate went on the track to
save the life of a child is properly refused.

13.  *Charge requiring verdict on contributory negigence; when
bad.*—Where a count charges willfulness or wantonness and
the evidence tends to prove it, a charge requiring a verdict
for the defendant on proof of contributory negligence is
obviously bad.

14.  *Contributory neglignce; a charge requirng verdict on proof of
when bad.*—A charge which requires a verdict for the de-
fendant on proof of contributory negligence, when the count
to which it is directed alleges willfulness and wantonness
and the evidence tends to prove it, is vicious.

15.  A charge which injects into the case an issue not made by the
pleadings is bad.

16.  *Replication; if issue is taken on bad plaintiff may recover on
it.*—A replication to a plea of contributory negligence which
states that the deceased was killed while trying to save the
life of a child, but fails to state that the attempt was not rash
or reckless, may be defective in respect of such failure; but
if the defendant takes issue on it the plaintiff is entitled to
recover so far as the alleged contributory negligence is con-
cerned, whether the efforts of the deceased to save life were
rash and reckless or not.

17.  *What is wanton and reckless disregard of probable con-
sequences.*—To the imputation to the defendant's employes
of reckless and wanton disregard of probable consequences,
it is not essential that they should have been aware of the
peril of the deceased or of the child in time to stop the train;
it is sufficient that it was likely that some person or persons
would be endangered by running the train at forty miles an

hour over a crossing in a populous town, and that they were conscious of such danger.

18. *Charge; when abstract.*—A charge was properly refused as abstract which instructed the jury that the conduct of a person in attempting to save a child from danger was reckless if the child was of sufficient mental and physical development to avoid the danger to which it was exposed, when there was no evidence of the development of the child.

19. A charge which pretermits a tendency of the evidence is properly refused.

20. *Wantonness not necessarily willfulness.*—Wantonness is not in every sense and necessarily willfulness, and a charge which asserts that they are the same in meaning is bad.

21. *A charge is bad which singles out particular evidence.*—A charge which singles out particular evidence and requests the jury to look to that only in determining a question in issue, is bad.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This was a suit for damages brought by Horace Orr as the administrator of Hannah Orr against the Louisville & Nashville Railroad Co. The defence was contributory negligence. To this plea the plaintiff replied that the deceased went on the railroad track in the effort to save the life of her grandchild who had gone on the track in front of an approaching train. The evidence was conflicting, but on the part of the plaintiff it tended to show that Hannah Orr was an old woman having in her charge a child known as her grandchild, but who was the child of a daughter of her husbnad; that while she and the child—some five or more years of age—were walking along the track of the railroad towards their home, the child attempted to cross the track at a public crossing; that a long and heavy freight train was approaching the crossing at the time; that Hannah seeing the child's danger attempted to save it, and in the attempt was struck by the engine and killed; that the train was moving at the rate of thirty or forty miles an hour through the town of Hartsell, a town of considerable population; that the crossing was in a populous part of the town, and that persons were frequently passing over it; that the engineer did not by the use of brakes or otherwise attempt to check the train after becoming aware of the

peril of the child and the deceased. This evidence was controverted in many important particulars. There was much pleading indulged in and many charges were asked all of which are sufficiently set out in the opinion. Charge No. 1 refused to the defendant asserted that it was not wanton, reckless or intentional misconduct on the part of the defendant that the bell was not run or the whistle blown, or that the speed of the train was great before the peril of the intestate became manifest. Charge 2 asserted that a person is chargeable with such negligence as bars a recovery who fails to look up and down the track when about to cross it in front of an approaching train, unless the defendant was reckless or wanton and that a failure to blow the whistle or ring the bell or to check the speed of the train is not that degree of negligence. Charges 13 and 14 were similar in terms, and were in substance that if plaintiff's intestate was killed while attempting to rescue a child from being run over by an approaching train under circumstances which would make the attempt rash and reckless in the judgment of a prudent person, her conduct amounted to contributory negligence which would defeat a recovery in this case. Charge 16 was to the same effect with the added clause, "unless you further believe that the defendant was guilty of willful or wanton "negligence." Charge 19 was substantially that while it was negligence on the part of plaintiff's intestate to attempt to rescue the child, yet if she saw the approaching train before she and the child got on the track then it was negligence as a matter of law for her to permit the child to get from her control and upon the track. Charge 21 was as follows: "As a matter of law it cannot be said that the running of the train at the speed at which this train was running and at the place where said injury occurred constitute gross or wanton recklessness, carelessness, or negligence on the part of the defendant." Charges 22, 23 and 32 limit the liability of the defendant to a knowledge on the part of those in charge of the train of the peril of the deceased or the child. Charge 26 requested a verdict for the defendant if the child was developed mentally and physically to a sufficient degree as to be able to avoid danger without the aid of Hannah; and if the deceased saw the engine and train before she attempted

to cross the track but recklessly and willfully undertook to cross the track in front of the engine and cars and was thereby killed; and charge 27 asserted that the jury could not take into consideration that the child was the approximate cause of the death of the deceased if developed as stated in charge 26. Charge 29 asserted that it was negligence in the deceased to attempt to cross the track if the child had already crossed in safety. Charge 33 requested that if the jury believed that the child had crossed the track in safety they may look to that fact to determine whether or not the child was in fact in danger.

THOS. G. and CHARLES P. JONES, for appellant, contended, that the complaint did not charge wantonness but simple negligence only and that to this charge the recklessness of the plaintiff's intestate was a full answer. That conceding the charge of wantonness was in the complaint it was still allowable to set up in the plea of the defendant that the intestate was reckless in going on the track. That the whole evidence failed to show wantonness or willfulness on the part of the servants of the defendant inasmuch as the failure, if there was failure, to sound the whistle and the like was not more than simple negligence. That wantonness could only be predicated on the knowledge of facts existing at the time of the injury, had by the managers of the train. That as a matter of law in this case the intestate's reckless conduct barred recovery by the plaintiff. That the defendant's servants were not even guilty of negligence since the testimony shows that when the intestate came on the track it was impossible to check the train. That the doctrine applicable to a case of attempt to save life did not apply because the intestate was responsible for creating a peril in that she suffered the child who was in her charge to go on the track and then recklessly followed it. The following authorities are cited on these points: 103 Ala. 134; *L. & N. R. R. v. Anchors,* 22 So. Rep. 298; 92 Ala. 269; 110 Ala. 328; *Ga. Pac. v. Lee,* 92 Ala. 262; *N. C. & H. L. R. R. v. Hembree,* 85 Ala. 485; *Perdue v. L. & N. R. R.,* 100 Ala. 535; *E. T. G. & V. R. R. v. Deavers,* 79 Ala. 217; *Linn v. A. G. S. R. R.,* 103 Ala. 136; 97 Ala. 305; 110 Ala. 328; 100 Ala. 365; 95 Ala. 412; 99 Ala. 75.

[Louisville & Nashville Railroad Co. v. Orr, Adm'r.]

ARTHUR L. BROWN and E. W. GODBEY, *contra,* contended, that the complaint charged willfulness and wantonness and that to this charge the plea of contributory negligence was no answer. That the evidence supported the complaints. That the plaintiff's intestate was killed in the attempt not reckless under the facts proved to save life and hence could not be charged with wantonness. That a slight check of the train would have enabled the intestate to extricate herself from peril and such attempt to check the train was a duty on the part of the servants of defendant the neglect of which indicated wantonness. That the intestate had the right to expect this attempt to be made and to act as she did even if she knew she would suffer injury. The authorities cited are, *Gov't St. Ry. Co. v. Hanlon,* 53 Ala. 77; *Woodward v. Andrews,* 21 So. Rep. 444; *Wharton's Law* of Negligence, Sec. 308; *Eckard v. L. I. Ry. Co.,* 3 Am. Rep. 721; *E. T. G. & V. Ry. Co. v. Dever,* 79 Ala. 221; *Buell v. Ry. Co.,* 31 N. Y. 314; *Ry. Co. v. Norwood,* 17 Ill. 509; *L. & N. Ry. v. Woods,* 17 So. Rep. 41; *Evansville & H. R. Co. v. Marohn,* 34 N. E. Rep. 27.

McCLELLAN, C. J.—The complaint contains three counts. The first alleges that Hannah Orr, plaintiff's intestate, on Nov. 16, 1895, lawfully attempted to cross the track of the defendant, the Louisville & Nashville Railroad Co. "in and on College street in the incorporated city of Hartsell, at which place the public are invited to cross said track, and do cross said track, in large numbers continuously, and in thus attempting to cross the track of the defendant, in a lawful and proper manner,—the defendant was through and by its agents and employés running and operating a certain freight train along its track through the said city and across the said College street at a high and dangerous rate of speed, towit, about thirty-five or forty miles an hour, without sounding the whistle of the locomotive, or ringing the bell thereof, or giving any kind or character of danger signal whatsoever as required by law,—the plaintiff's intestate was struck by the said locomotive, train, or cars of the defendant and violently thrown to the ground, thereby being maimed and killed. That the death of plaintiff's intestate was the result of the care-

lessness, negligence and recklessness of the defendant corporation, its agents, or employés* * * in operating the said train as set out above." The second count avers that "plaintiff's intestate while lawfully going along and through College street, in the town of Hartsell, Alabama, a populous and much traveled street, where the public are invited to travel and cross said railroad, and where they do cross in large numbers continuously, and one of the main thoroughfares of said town of Hartsell, an incorporated city, the said defendant was by and through its agents or employés * * * operating and running a locomotive and train of cars along its track, through said incorporated city, and across the said College street, at a high and extremely dangerous rate of speed, to-wit, about thirty-five or forty miles per hour, whereby plaintiff's intestate was struck by the said locomotive or train, and violently hurled to the ground and killed, by and through the negligence, carelessness and wantonness of the defendant corporation, its agents or employés * * * in operating the said train as above set out." The third count is as follows: "The plaintiff claims of the defendant the like sum of nineteen hundred and ninety-nine dollars damages for that heretofore, to-wit, on or about the 16th day of November, 1895, while the plaintiff's intestate was lawfully and carefully walking along College street in the incorporated city of Hartsell, Alabama, in the discharge of her lawful and necessary duties, the defendant corporation was through and by its agents or employés * * * * operating a locomotive and train of cars along its track in said incorporated town, at a high and dangerous rate of speed, to-wit, thirty-five or forty miles per hour, without sounding the whistle, ringing the bell, or without giving any other kind or character of signal or warning of danger; whereupon plaintiff's intestate was struck by said locomotive or train of cars of the defendant corporation and violently thrown to the ground and killed by and through the willful acts, gross negligence, reckless, carelessness and wantonness of the defendant corporation, its agents or employés in thus operating said train," etc., etc.

A plea of contributory negligence to the whole complaint was held bad on demurrer, on the theory that the

complaint charged the death of the intestate to wantonness or willfulness on the part of the defendant's employés.

It is very clear that the first and second counts do not charge wantonness or willfulness. The running of a train at the alleged high and dangerous rate of thirty-five or forty miles an hour through a populous town and over a street crossing where persons have a right to cross and do cross in great numbers continuously, with or without signals of approach does not necessarily involve an intention on the part of the trainmen to kill, or such reckless disregard of probable consequences as would amount to wantonness. If the operatives did not know the character of the place, did not know that people were wont to be or to pass there in such numbers and with such frequency that there was a likelihood or a probability that persons or a person would be there or passing there at the time of approach, it cannot be said that they had in mind to injure such persons, or that their conduct was so recklessly indifferent as to consequences to such persons as evidenced wanton speculation and trifling with human life. The facts averred in these counts might be evidentially sufficient to authorize a jury to infer that the trainmen had knowledge or notice of the dangerous character of the crossing; but that is not sufficient in pleading. The main fact necessary to be found must be alleged. Whether the jury find it to be proved or not is another question. It was open to them on these averments to find that the trainmen did not have this knowledge or notice, and thus to have found them guilty of wantonness or willfulness, if the counts should be held to so charge, when they in fact had at the time no conception that there was a likelihood or a probability or any real danger of running over a person at that place. If such was the case, they could have been guilty of negligence only, and not wantonness or willfulness. And in recognition of this, the pleader himself in the first count ascribes the intestate's death to "carelessness, negligence, and recklessness," which is no more than a charge of negligence.—*K. C. M. & B. R. R. Co. v. Crocker*, 95 Ala. 412, 432—and in the second count to "negligence, carelessness and wantonness,"

32

which is bad for repugnancy.—*Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 367, 382—and really avers, in the alternative, either negligence *or* wantonness, since an act cannot be done through inadvertence, involving of course the absence of all mental action in respect of it, and at the same time be done wantonly, that is with a sense of what is passing accompanied by a conscious disregard of consequences implying a willingness to inflict injury, and, construing the count against the pleader, it must be held to charge negligence only.—*Martin's Case, supra.* So that both upon the particular facts alleged, and upon the general charge of fault made in each of these counts, it is plain that they charge negligence only, and not willfulness or wantonness.—*Ga. Pac. Ry. Co. v. Lee,* 92 Ala. 262; *Louisville & Nashville Railroad Co. v. Brown,* (MS.) present term.

The third count is of somewhat more difficult interpretation. It in terms ascribes intestate's death to the "willful acts, gross negligence, reckless carelessness and wantonness" of the defendant's employés. For one to kill another by a willful or wanton act implies an intentional killing or a situation of danger within the consciousness of the actor and such conduct on his part with reference to that situation as implies a reckless indifference to the probable consequences of the course he pursues. In view of the rule well established in this court that negligence, willfulness and wantonness may be averred in very general terms, terms so general indeed as to be little if at all more than conclusions, leaving the facts to be developed by the evidence, this ascription of the intestate's death to the willful and wanton acts of defendant's employes in running a train at the alleged high and dangerous rate of speed over a public street crossing carries with it a sufficient implication of a consciousness on the part of the employes that the intestate was likely to be or probably would be killed by the train to make it a good charge of willfulness and wantonness, unless the ascription of the disaster also to their "gross negligence and reckless carelessness" requires a different interpretation.—*Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 367, 381, and cases there cited. We do not think the use of these phrases emasculates the charge as one of willfulness and wantonness.

[Louisville & Nashville Railroad Co. v. Orr, Adm'r.]

The term "gross negligence" has been long and often employed in this State and in cases before this court as a synonym for wantonness or reckless indifference to probable consequences, and while its inaccuracy in that connection has been pointed out, it has been directly recognized as involving more than negligence of any degree, and as being the equivalent of wantonness, or that recklessness which is beyond all negligence. In *Ga. Pac. R'y Co. v. Lee,* 92 Ala. 262, it was held that the term "gross negligence" has been so frequently used as defining that recklessness, or wantonness, or worse, which implies a willingness to inflict the impending injury, or a willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate a wrong, "that it is perhaps too late, if otherwise desirable, to eradicate what is said to be an unscientific definition, if not indeed a misnomer." It is upon these considerations that we feel safe in holding that the term when used, as here, in connection and conjunction with the words "willfulness" and "wantonness" is to be taken, if not as expressing the same idea, at least as not repugnant to them. And so with the phrase "reckless carelessness:" That in this connection means reckless indifference, not mere negligence or inadvertence.—*K. C. M. & B. R. R. Co. v. Crocker,* 95 Ala. 412, 432. And hence our conclusion that this third count charges that defendant's employés willfully and wantonly ran the engine and train against the plaintiff's intestate and killed her; and our further conclusion that the plea of contributory negligence as addressed to the whole complaint was properly held bad on demurrer.

Pleas 3 and 4 attempt to set up that the intestate's wantonness and deliberate exposure of herself to the danger which caused her death so contributed to that result as to bar this action. We suppose this line of defense was sought to be resorted to on the authority of a *dictum* in *Ga. Pac. R'y Co. v. Lee,* 92 Ala. 262, 272, of members of the court other than the writer of the opinion, and in which he did not concur, all which is there shown. The idea is plainly fallacious, since even consent can give no right to kill, and it was repudiated in *Louisville & Nashville Railroad Co. v. Markee, Admx.,* 103 Ala. 160, 170. The court properly sustained demurrers to these pleas (3 and 4).

Pleas 5 and 6 to the first and second counts of the complaint properly presented the defense of contributory negligence to those counts, which, as we have held, charged only negligence.

Plea 7 addressed to the third count was not appropriate thereto. It undertook to traverse the wantonness and the like set up in that count and then to aver contributory negligence as a defense against the charge of negligence supposed to remain in that count after the denial of its averments of wantonness, etc. The truth is that the count contained no averment of negligence under that of wantonness, willfulness, etc., and that the only defense to it was the general issue of not guilty, which was interposed separately by the defendant. This plea 7 merely cumbered the case, *Markee's Case, supra,* but no ruling appears to have been made upon it.

The replication to the pleas of contributory negligence addressed to the first and second counts was as follows: "In front of said approaching train was an infant, known as the grand-child or step grand-child of the plaintiff's intestate, a member of her household, and about three years old, who was on the track and in deadly peril, and in her effort to save said child she was struck and killed." If this replication is bad its defect is not pointed out by the demurrer. It is the settled doctrine in this connection, based upon the law's regard for human life, that when one risks his life and loses it in an effort to save the life of another, or to protect another who is exposed to a sudden peril, such risk and exposure for such a purpose is not negligence, unless the effort is made under such circumstances as to constitute recklessness and rashness in the judgment of a man of ordinary prudence; and it cannot be said to be a rash or reckless act if the appearances justified a belief that he could effect a rescue, even though he should also have reason to believe, and in fact did believe, that he might fail and receive grievous injury himself.—*Eckert, Admx. v. Long Island Railroad Co.,* 43 N. Y. 502; *Government Street Railroad Co. v. Hanlon,* 53 Ala. 77-8; *Donahoe v. Wabash, St. Louis & Pacific Railway Co.,* 83 Mo. 560, s. c. 53 Am. Rep. 594; *Sporner v. D. L. & W. R. R. Co.,* 115 N. Y. 22; *Linnehan v. Sampson,* 126 Mass. 506, s. c.

30 Am. Rep. 692. As we have indicated, if it be supposed that this replication is insufficient for not averring circumstances showing that the attempt made by the intestate was not so rash, or reckless, and unpromising of success as that a prudent man would have made it under the laudable incentive to save human life, the demurrer gives no hint of such ground of objection; but, to the contrary, merely sets up that the matters stated in the replication do not excuse intestate for getting in front of the moving train, and thereby placing herself in the peril which caused her death. It was a general demurrer, and properly overruled.

Defendant's rejoinder to this replication was in part a repetition of its pleas of contributory negligence, and for the rest was a denial of the facts alleged in the replication. Its effect was indeed to take issue upon the replication. True it avers that the intestate had charge of the child and negligently allowed it to run away from her, but it predicates nothing on this, going on instead to affirm that the child had crossed the track and was in a place of safety, and that the intestate was killed in an effort not to rescue the child but to cross over the track herself. All which was provable either under the pleas of contributory negligence or upon issue joined on the replication. Demurrer to this rejoinder having been overruled, plaintiff took issue on it and filed two special surrejoinders, which after the manner of the rejoinder, but hearkened back upon matters already presented, to which defendant interposed a demurrer of which the first and second assignments were plainly general, and the third and last, viz., that the surrejoinder is a departure from the complaint, is as plainly without merit, as the court held. Thereupon the defendant, apparently having exhausted the nomenclature of pleadings, offered to file a paper which came in the time and sequence of a rebutter, but which it called "A." This "A" proposed to escape all the negligence and willfulness charged in the complaint by setting up that the trainmen could not stop the train after they saw the intestate, which fact was of course provable under the general issue. But the court was of opinion that it was time to put a stop to this bandying back and forth of averments which were either already in the case or had nothing to do with it,

and very properly declined to allow this "A" to be filed. And so they went to the jury.

A good many exceptions were reserved to the admission of testimony as to the populousness of the vicinity of the street-railway crossing where intestate was killed, the number of people who passed across there in a given time, etc., etc. All this went to prove the averments of the complaint, and the exceptions were obviously without merit.—*Memphis & Charleston Railroad Co. v. Martin*, 117 Ala. 367.

It is apparent that the witness George Hanley's "guess" at the speed of this train was his judgment or opinion based on his experience, he having ridden on trains and "worked on a section and seen them pass by him lots of times."

It was claimed for plaintiff that the speed of this train might have been sufficiently diminished after the engineer discovered intestate's peril to have afforded her opportunity to escape. This claim was within the issues, and there was evidence tending to show that a very slight diminution of speed would have conserved her safety. In this connection it was entirely proper for plaintiff to show that the train was equipped with brakes throughout—the means or one of the means of checking its speed.

There was, in our opinion, evidence before the jury tending to prove each count of the complaint. To run a train at the rate of forty miles an hour through a town of the population of Hartsell, built close upon and on and along each side of the track, and across one of its public streets in a populous neighborhood, along which across the railroad there was the travel shown in this record, are facts sufficient to go to the jury on the question of negligence *vel non;* and the condition of things at this crossing, the extent and frequency of its use by people in passing along that street, were facts sufficient in connection with the evidence of the absence of danger signals of approach and the other evidence in the case for the jury on the question of knowledge or consciousness on the part of the trainmen of the peril to others of maintaining that rate of speed, in that way, at that place, and hence on the question of willfulness or wantonness *vel non.* On the other hand there was evidence

from which the jury had a right to find that the deceased, under the peculiar exigencies of the situation, was not guilty of negligence in being on the track when she was stricken and killed. From this follows our approval of the trial court's refusal to give affimative charges for the defendant on the complaint and on the second and third counts separately, and also charge one requested by the defendant.

Charge 2 would have misled the jury from a consideration of the matters set up in the replication and which the evidence tended to prove. It would have required, or tended to have required them to find deceased guilty of contributory negligence though they might also have believed that she was at no fault in going upon the track to save the life of the child.

The third count charging willfulness and wantonness, as we have held, and the evidence tending to prove it, charge 4 and others requiring a verdict for defendant on proof of contributory negligence of the deceased, were obviously bad.

Charges 13 and 14 have each two vices. (1) They require a verdict on contributory negligence even though the defendant was guilty of wantonness and the like. And (2) they inject into the case an issue which was not made by the pleadings, namely, whether deceased's effort to rescue the child was rash or reckless in such degree that a prudent person would not have made it under the circumstances. The replication, as we have seen, did not aver that the attempted rescue was not rash or reckless. It may be that it should have so averred. If so its failure to so aver should have been pointed out by the demurrer. The demurrer did not specify this as a defect nor, indeed, any defect, but was bad for generality. If it was not necessary for this fact to appear of the replication, the defendant should have brought it into the case by a rejoinder. This it did not do, but instead in effect took issue on the replication. On this state of the pleading, the plaintiff was entitled to recover, so far as the alleged contributory negligence of the deceased is concerned, whether her effort to save the child was rash and reckless or not. This second vice of charges 13 and 14 infects also 16, and the first defect in those charges is common to charge 19.

Charge 21 is confusing. The jury might well have understood it to mean that the court instructed them that as a matter of law the defendant's employés were not guilty of wantonness etc.; though we suppose it to mean that the question of wantonness or not could not be determined as matter of law, but was for the jury.

To the imputation of reckless and wanton disregard of probable consequences to defendant's employés, it was not essential that they should have been aware of the peril of the deceased or of the child in time to have stopped the train etc. It was sufficient, as we have seen, that it was likely or probable that some person or persons would be endangered by running the train at forty miles an hour over that crossing, and that they were conscious of such danger—both questions for the jury. Charges 22, 23 and 32 were therefore bad.

We have already said that wantonness and willfulness of deceased in exposing herself to this danger would be no defense to the charge that defendant's employés wantonly and willfully ran over and killed her. The several charges requested by the defendant on this subject were well refused.

Charges 26 and 27 are abstract. There was no evidence in the case that the child was of sufficient mental and physical development to avoid the danger to which, according to a tendency of the evidence, it was exposed.

Charge 29 pretermits a tendency of the evidence to show that although the child crossed the track in safety it attempted to cross back, and thus became endangered and that it was from this that deceased attempted to rescue her.

Wantonness is not in every sense and necessarily willfulness, as asserted in charge 30.

Charge 33 is an unwarranted singling out of particular evidence.

Affirmed.