# Central of Georgia Railway Co. *v.* Partridge.

*Action against Railroad Company to recover Damages for Personal Injuries.*

1. *Action against railroad company; when question of wantonness or willfulness one to be submitted to jury.*—In an action against a railroad company, where the plaintiff counts upon the wantonness or willfulness on the part of the defendant's servants or employes inflicting the injury complained of, it was shown that the injury was caused on Saturday night while the plaintiff was crossing the defendant's track at a public road crossing in a town of two or three thousand people; that the crossing was at the principal business street of the town which was used by pedestrians and vehicles and people on horseback; that said crossing was much frequented and was more used on Saturday night than any other; that

[Central of Georgia Railway Co. v. Partridge.]

the speed of the train which ran upon the plaintiff was from twenty-five to forty miles an hour, and neither bell was rung nor whistle blown. It was also shown that just before the accident a freight train making much noise had just crossed the crossing on a side track. Plaintiff waited for the freight train to pass and delayed going on the main line, where the accident occurred, until the freight train had gotten out of the way. Plaintiff testified that he stopped and looked up and down the passenger track, and listened, but could not see or hear anything approaching; that just as he stepped upon the main track he was run upon by a passenger train upon the defendant's track and sustained the injuries complained of. There was also introduced in evidence an ordinance of the town of Avondale prohibiting the running of trains within the corporate limits at a higher rate of speed than five miles an hour. *Held*: That the question as to whether or not the defendant's servants or employes were guilty of wantonness or willfulness in inflicting the injury upon the plaintiff was one for the consideration of the jury, and the court properly refused to give the general affirmative charge in favor of the defendant.

2.  *Same; same.*—In such a case, the fact that the engineer in charge of the defendant's engine which caused the injury was not shown to have known of the circumstances and conditions surrounding the crossing, is not sufficient to prevent the jury from concluding from the evidence that the injury was wanton or willful.

3.  *Wanton or willful injury; wanton and deliberate exposure of plaintiff no defense.*—In an action against a railroad company, where the plaintiff seeks to recover damages for wantonness or willfulness on the part of the defendant's servants or employes inflicting the injuries complained of, wantonness and deliberate exposure of the plaintiff to danger constitutes no defense; and, therefore, in such a case, a charge is erroneous and properly refused which instructs the jury "that although you may find from the evidence that the servants of defendant were guilty of negligence contributing proximately to produce the injury to plaintiff, and although you may further find from the evidence that the agents and servants of defendant were guilty of wantonness in the management and running of said train, still if you find from the evidence that plaintiff was himself guilty of wanton and reckless conduct in going on said crossing in front of said train, then your verdict must be for defendant."

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought by the appellee, Francis M. Partridge, against the appellant, the Central of Georgia Railway Company, seeking to recover $20,000 damages for personal injuries alleged to have been caused by the negligence of the defendant or its employes.

The complaint contained six counts. The court gave the general affirmative charge in favor of the defendant as to the first five counts. The sixth count, after averring that the injury complained was sustained by plaintiff while he was trying to cross the defendant's railroad track at a public crossing in the town of Avondale, and the injuries sustained, then continues as follows: "Plaintiff further alleges that defendant wantonly or intentionally caused plaintiff to suffer said injuries and damage in the manner following, viz.: Defendant's servant or agent in charge or control of said engine wantonly or intentionally caused or allowed said engine to strike or run upon plaintiff as aforesaid. All to plaintiff's damage twenty thousand dollars, wherefore he sues."

The defendant pleaded the general issue and several special pleas setting up the constributory negligence of the plaintiff. The court sustained the plaintiff's demurrers to the special pleas, in so far as they sought to answer the 6th count of the complaint.

The injury to the plaintiff was inflicted on Saturday, January 5th, 1901, about 8 o'clock at night, by a passenger train on defendant's road, running from the east, on which side is Woodlawn, to the west, to Birmingham. It occurred in the town of Avondale, shown to have a population of from 1500 to 3,000 people, as differently estimated by witnesses, and at a point on the west margin of Spring street, which runs east and west, where it crosses the railroad track. This street, as shown, is eighty feet wide, is the principal business street of the town, and more frequented than any other street. It was used at the time, as shown, by foot passengers, men, women and children, of all sorts and sizes, people on

horseback, in buggies, and carriages, and by people from Birmingham, Woodlawn and surrounding country, and more used on Saturday night, than any other night of the week. There was no conflict in the evidence showing the great frequency with which the street was used.

The speed at which the train was running was variously stated. One witness put it at not less than 25 miles an hour, and others that it was running very fast.

The plaintiff testified that it was going from 30 to 40 miles an hour. A witness for defendant, R. C. Burris, stated that he would judge it was running ten miles, though he stated on the cross examination that he was paying no special attention to it—whether it was running 10 or 100 miles, and that it might have been running 6 or 30 miles an hour.

The evidence tends to show without conflict, that no bell was rung, and no whistle blown, and it was not shown that the engine was provided with a headlight.

It was shown also, that a freight train, making much noise had just passed the crossing, whether coming from the east or west is not positively shown; some witnesses stating from the one and others from the other direction. The moving of this train obstructed the crossing for the time, and plaintiff is shown to have delayed going on the main line until it had gotten out of the way. There was a side track making off from the main track on the east, which commenced about 382 1-2 feet from the west margin of Spring street, where plaintiff was injured. It was further shown, that on the occasion plaintiff walked from the north side of defendant's track, across said side track, which was from 15 to 20 feet from the main line. He testified, and there is no conflicting evidence as to this, that the night was dark, and when he passed over the spur or side track, he stopped and looked up and down the passenger track, and listened and did not hear or see any train approaching; that after stopping near the main line, and looking and listening, he stepped over the first rail of the main line, when for the first time he discovered the train about five

yards from him running very fast; that he did not know there was a train approaching,—there was none that he saw and that he was hit by it and knocked down and rolled about two car lengths.

Kelly, a witness for defendant, testified that he was a civil engineer and made measurements at the point of the accident; that the rails of the side and main track were about 20 feet apart; that the main track at that point is straight, looking east, as far as he could see, at least half a mile; that after getting in 10 feet of the main line, if there was anything in the way like cars on the side track, you could see back, east, to the switch stand, 382 1-2 feet from where a person would be standing at the crossing; that when getting within three feet of the main line, one could see, east, towards Woodlawn, as far as he could see the track—at least half a mile.

There was no testimony as to whether the engineer in charge of the engine had ever been over that crossing before, or knew anything of its use by the public, or knew anything of the size of Avondale, or the number of people who crossed there.

An ordinance of the town of Avondale was introduced by plaintiff which forbade, under penalty, the running of any train within the limits of the town at a greater rate of speed that 5 miles an hour.

The defendant requested the court to give to the jury the following written charges and separately excepted to the court's refusal to give each of them as asked: (1.) "If you believe the evidence, you will find a verdict for the defendant." (7.) "I charge you that if you believe the evidence, you cannot find for the plaintiff on the 6th count of the complaint." (8.) I charge you that if you believe the evidence, the plaintiff can not recover for the willful or wanton misconduct of defendant's servants." (9.) "If the jury believe all the evidence, they will find that the engineer was not guilty of any willful or wanton negligence." (16.) "I charge you that although you may find from the evidence that the servants of defendant were guilty of negligence contributing proximately to produce the injury to plaintiff, and al-

though you may further find from the evidence that the agents and servants of defendant were guilty of wantonness in the management and running of said train, still if you find from the evidence that plaintiff was himself guilty of wanton and reckless conduct in going on said crossing in front of said train, then your verdict must be for defendant."

There were verdict and judgment for the plaintiff assessing his damages at $2,000. The defendant moved the court to set aside the verdict and to grant it a new trial upon the ground that the verdict was contrary to the law and the evidence, and that there was no evidence of wantonness or willfulness on the part of the defendant's employes. The court overruled this motion, and the defendant duly excepted. The defendant appeals, would have been received although the speed of the train court to which exceptions were reserved.

LONDON & LONDON, for appellant.—It is well settled law that a foot traveler approaching a railroad crossing, with which he is familiar, is bound to exercise care and caution thereat; that the trainmen have the right to assume that foot travelers approaching the crossing, seeing a train approaching, will not walk in front of the train when it is so close that no preventive efforts will prevent a collision and injury; that before a recovery can be had for an injury received by a foot traveler at a crossing, it must be shown that the injury was the proximate result of the wrongful act of the trainmen, and wherever it appears that the same or a greater injury would have been received although the speed of the train had been lawful, then the jury are not authorized to find that the unlawful speed was the proximate cause of the injury. The test of the connection between the wrong and the injury is that the wrongful act must have been the *causa sine qua non*—one without which the accident would not have occurred.—1 Shear. & Refd, Neg., 527; 1 Hilliard on Torts, p. 130, § 4; *Taylor v. Baldwin*, 78 California, 517; 36 Am. State Reports, 809; *Williams v. Iron Co.*, 106 Ala. 254.

[Central of Georgia Railway Co. v. Partridge.]

In the case at bar it was not shown whether the engineer saw or did not see the appellee in time to have prevented the injury by the use of every appliance at hand. If it be held there was evidence which would justify the jury in inferring he did see the appellee approaching the track, then, as often declared by this court, he had the right to assume that appellee would not go upon the track, and his failure to slacken the speed of the train upon thus discovering the appellee approaching would not be evidence of willfulness or wantonness.—*L. & N. R. R. Co. v. Black*, 89 Ala. 213; *Burson v. L. & N. R. R. Co.*, 116 Ala. 188; *Bush v. Southern Ry.*, 122 Ala. 470; *Central of Ga. Ry. Co. v. Foshee*, 125 Ala. 199.

Under the repeated decisions of this court, it has been regarded as settled that before an engineer could be convicted of wilfulness or wantonness in the operation of his train over a much used crossing, evidence from which the jury could legitimately find or infer that he had *actual knowledge*, not merely *notice*, of the character and use of the crossing, must be laid before the jury, and not only this, but that the natural and probable consequence of running his train over such a crossing at the rate of speed maintained, and witout signals of warning, would be to inevitably or probably injure some one thereat.—*G. P. Ry. Co. v. Lee*, 92 Ala. 262, 270; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *Same Case*, 97 Ala. 308; *R. & D. R. R. Co. v. Greenwood*, 99 Ala. 513.

BOWMAN, HARSH & BEDDOW, *contra*, cited *Central of Ga. R. Co. v. Foshee*, 125 Ala. 221; *M. & C. R. R. Co. v. Martin*, 131 Ala. 278; *Rob. Min. Co. v. Tolbert*, 132 Ala. 462; Bailey on Master & Liability, 109; Wood's Master & Servant, §§ 335-354; *Shumacher v. R. R. Co.*, 37 Fed. Rep. 174; *Hailey v. K. C., M. & B. R. R. Co.*, 113 Ala. 651; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308.

HARALSON, J.—1. The assignments of error are in the refusal of the court to give general charges for the defendant and one other to be hereafter noticed.

41c

There was no error in refusing the general charges for defendant. Under the facts of the case, the court was not authorized, as a matter of law, to hold that the defendant's servants or employes were not guilty of wantonness or willfulness in inflicting injury on plaintiff.

The crossing at which plaintiff was injured was a public crossing, a right of way over which the public was entitled, as much so as the railroad itself. Whether or not the company was guilty of wantonness or willfulness, was a question properly submitted to the jury under all the evidence.

In *L. & N. R. R. Co. v. Webb*, 97 Ala. 315, it was held, that "When it is shown that the train was run at a greater rate of speed over a public crossing, used to the extent the evidence shows the present one was used, in a populous city, than is permitted by a city ordinance, and without regard to the regulations adopted by the city for the protection of persons using the crossing as a public thoroughfare, and in violation of the statutes of the State regulating the speed and signals to be given at such places, and there is evidence tending to show that the injury resulted therefrom, it is proper and necessary to admit the fact of the degree of negligence to the determination of the jury."

In *M. & C. R. R. Co. v. Martin*, 117 Ala. 384, it was again held, that "Persons in the proper exercise of this right [of using public crossing] are in no sense trespassers, and while it is incumbent on them to exercise due care, by looking and listening for approaching trains, it is equally the duty of those operating trains over such places to exercise due care to prevent such injury. If in utter disregard of this duty and of the many restrictions imposed by the statute and city ordinances enacted to protect life and property at such places, those in charge should rush an engine voluntarily and unnecessarily over a public crossing, where it is likely, at the time that persons are exercising this right to cross the track as a public highway, a condition

[Central of Georgia Railway Co. v. Partridge.]

or fact, on account of its location in a populous city, and the extent of its use as such, would authorize a jury to infer was known to defendant, with such reckless speed that due care in keeping a proper lookout for persons who might be upon the track could not be had by those operating the train, or if such persons should be discovered upon the track, could not possiby stop or slacken its speed in time to avoid inflicting injury, and injury did result from such negligence, can it be said, as a conclusion of law, upon any safe rule, that such reckless conduct and disregard of consequences, is not the equivalent of willfulness or wantonness?"—*Birmingham R. & E. Co. v. Smith,* 121 Ala. 352.

In *Southern Railway Co. v. Bush,* 122 Ala. 487, it was said, that "While wantonness on the part of the engineer cannot be predicated on the mere fact that he ought to have seen deceased on the trestle, or on anything short of actual knowledge, yet this actual knowledge need not be positively or directly shown, but like any other fact, may be proved by showing circumstances from which the fact of actual knowledge is a legitimate inference. Otherwise, in cases of this character, this fact could never be proved except by the testimony of the engineer himself." After referring to the conditions and circumstances tending to show that the engineer might have seen a person on the track, it is added, that these "are relevant and admissible for the purpose of proving that he did see such person, and may be properly submitted to the jury on this issue; and while no presumption arises from these facts that the engineer did see the person on the track, yet this may be inferred from these facts by the jury whose province alone it is to decide the weight to be given facts legally in evidence and their effect on the issue, which they are admitted to prove."—*L. & N. R. R. Co. v. Orr,* 121 Ala. 497; *S. & W. R. Co. v. Meadors,* 95 Ala. 137; *Nave v. A. G. S. R. R. Co.,* 96 Ala. 268; *Stringer v. A. M. R. Co.,* 99 Ala. 410.

2. There was no error in refusing the charge, that although the jury might find from the evidence that the servants of defendant were guilty of wantonness in the

management of the train, which resulted in plaintiff's injury, yet if they further found, that plaintiff was himself guilty of wanton and reckless conduct, in going on said crossing in front of said train, then their verdict must be for defendant. A railroad company, even in case of a trespasser had no right to kill him on that account, or fail to use all preventive means to avoid doing so, after discovering his peril. Even consent of the party injured could not give the right to kill.

In the case of *Stringer v. A. M. R. Co., supra,* in referring to wantonness and willfulness on the part of the defendant, may be found the expression: "Proof of the latter character of negligence, will authorize a recovery although the party injured may have been found guilty of contributory negligence, unless the contributory negligence on his part is of the same character as that of which defendant was guilty, in which event, he would not be entitled to a verdict." This expression does not seem to have been necessary to the decision of the cause before the court, but, whether a *dictum* or not, the doctrine is unsound and clearly repudiated by later decisions of the court.—*L. & N. R. R. Co. v. Orr,* 121 Ala. 499; *Ib. v. Markee,* 103 Ala. 160, 170.

3. It is insisted that the engineer of defendant is not shown to have known of the conditions at the crossing, and, therefore, his conduct cannot be said to have been wanton or willful. A railroad company would be grossly negligent to place an engineer in charge of a train who was not familiar with the run, and it will not be inferred or presumed it did so. This inference or presumption, as bearing on the question whether the engineer knew of the conditions at the crossing, is evidently matter proper for the consideration of the jury. "It is presumed the master or the person placed in charge of a hazardous business or department thereof is familiar with the dangers, latent or patent, ordinarily accompanying the business he had in charge." The master should inform the servant of the particular perils and dangers of the same.—Bailey Mast. Liab. 109; Wood Master and

[Mansur & Tebbets Implement Co. v. The Tissier Arms & Hdw. Co.]

Servant, §§ 335, 354; *Robinson M. Co. v. Tolbert,* 132 Ala. 462; 31 So. Rep. 519.

What we here say is to be taken in connection with what has been said above, as to the necessity of the jury's finding that the engineer was in fact acquainted with the conditions under which he was operating the train.

The motion for a new trial was properly overruled.

No error appearing in the rulings of the court, the judgment is affirmed.

Affirmed.