# Duncan *v.* St. Louis & San Francisco Railroad Company.

### *Action for Injury to Person on Track.*

1. *Appeal; Waiver of Error; Withdrawal of Count.*—Where a plaintiff, after the evidence was in voluntarily withdraws certain counts of the complaint he waives any error in the ruling on demurrers to such count.

2. *Railroads; Care as to Trespassers.*—A railroad owes no duty to trespassers to keep a lookout for them on the track, and owes them no duty except not to injure them wantonly or wilfully.

3. *Same; Crossing Accident; Duty to Keep Lookout.*—Where a railroad runs through a thickly populated locality where frequent crossings of its track are necessary, it becomes its duty to keep a lookout at such point.

4. *Same; Contributory Negligence; Going on Track Without Looking.*—A person is guilty of contributory negligence in going on the track who approaches a railroad track by a flight of steps down an embankment and steps upon the track in front of a moving train without looking in either direction to see that the way was clear where the train which struck her would have been in plain view from the time she started down the steps if she had looked.

5. *Same; Complaint; Wilful Injury.*—A count is insufficient to charge wilful or wanton negligence which alleges the number of inhabitants of the town, the popular use of the crossing, the situation of its tracks in reference to the mills and other parts of the town, and that in utter disregard for the safety of persons passing at that point, and without giving any signals of approach or maintaining a lookout, wilfully and wantonly, etc., propelled an engine against plaintiff. The facts therein stated failing to constitute such misconduct.

6. *Same; Crossing Accident; Contributory Negligence; Jury Question.*—The evidence in this case is stated and examined and it is held to be a question for the jury as to whether plaintiff's negligence in going on the track proximately contributed to the injuries sustained.

7. *Same; Instructions.*—A charge asserting that the railroad was under no duty to sound the whistle while approaching the path across the track in this particular care, is invasive of the province of the jury and is erroneous.

8. *Same.*—A charge asserting that the railroad was under no duty to run its trains at such rate of speed while approaching the path crossing the track in this particular case, so that the train could be stopped before reaching the path if a person were discovered on the track, was erroneous as invasive of the province of the jury.

[Duncan v. St. Louis & San Francisco Railroad Company.]

9. *Same.*—A charge asserting that unless the jury believe that the engineer discovered plaintiff's position of danger on the track in time to avoid the injury, and he neglected to do everything that would likely or probably prevent the injury, and that he was conscious that his acts of omission would likely or probably result in injury to the plaintiff, they should find for the defendant, is erroneous, as consciousness is an element of wantonness which was not indispensable to plaintiff's right to recover under the pleadings in this case.

10. *Same.*—A charge asserting that the failure to blow the whistle after the engineer discovered the injured person on the track does not of itself constitute such negligence as will authorize a verdict for the injured person, was erroneous as invasive of the province of the jury.

11. *Same.*— charge asserting that unless the engineer, after discovering plaintiff's peril, did not in good faith exercise due diligence and care to prevent the injury, a verdict will be found for defendant, invaded the province of the jury and was erroneous.

12. *Same; Persons on Track; Injuries; Instruction.*—A charge asserting that if the failure to blow the whistle was a mere error of judgment, having no evil purpose of intent or consciousness of probable injury, and the failure to blow the whistle was the only negligence of the engineer, then a verdict should be found for defendant, is erroneous as calling for a verdict for defendant· notwithstanding the jury should find that the failure to blow the whistle occurred after the engineer discovered the perilous position of the person on the track, which failure they may have found to be the proximate cause of the injury.

13. *Negligence; Contributory Negligence; Injury Avoidable Notwithstanding Contributory Negligence.*—Where an injured person is negligent in assuming a position of danger, if he be·free from negligence after becoming conscious of his danger, he may recover if the person charged with the injury became aware of his peril in time to avoid injuring him, by the proper use of all preventative measures at his command, and negligently failed to adopt such measures.

14. *Same; Discovered Peril; Actions; Pleading.*—A count for wilful injury is not absolutely necessary to recovery under the doctrine of discovered peril and a recovery may be had for personal injury upon a count charging simple negligence under the doctrine of discovered peril.

15. *Same; Acts Constituting Wilful Negligence.*—To constitute wilfulness or wantonness or reckless indifference to probable consequences the act done or omitted must be done or omitted with a knowledge or a present consciousness that injury will probably result; and this is not to be implied from mere knowledge of the elements of the dangerous situation in which a person may be, and negligent and inadvertent acts in respect of the peril.

16. *Trial; Instructions Outside the Issue.*—Where there was no evidence that the injured person was walking on the track towards the train, a charge is erroneous as outside of the issue which asserts that an engineer has the right to presume that a person walking on the track towards the train, will get off, etc.

[Duncan v. St. Louis & San Francisco Railroad Company.]

17. *Same; Undue Prominence to Evidence.*—Instructions giving undue prominence to single features or parts of the evidence are properly refused.

18. *Same; Instructions Outside the Issue.*—Where a settlement and release were set up by way of plea and fraud and deceit in procuring the release, and that the money was given as a gift and not as a release was set up by replication, a charge asserting that if plaintiff knew before the suit was brought that the money was paid under the release a verdict must be found for defendant, was erroneous as outside the issue.

19. *Same; Settlement and Release of Damages.*—Where the testimony tended to show that a settlement was fairly made with plaintiff, and that after a full explanation and understanding of its terms the plaintiff executed the release, a charge is not objectionable as failing to predicate the jury's belief on the evidence, which asserts that if the jury believe that plaintiff made the settlement as claimed by defendant they had nothing to do with whether or not she was entitled to more money, and that if she made the settlement she was bound by it.

20. *Same; Instructions Ignoring Issues.*—Where the issues presented by the pleading was a settlement and release of damages and a replication setting up fraud and deceit in its procurement and that the money so paid was a gift and not a release, a charge which asserts that unless the money was a gift to the plaintiff, the verdict should be for defendant was erroneous as ignoring the question of fraud in the procurement of the release; and for like reasons, the charge was bad which asserted that if defendant made a settlement with plaintiff for injuries which are the basis of this suit and paid her $10.00 in settlement of the claim, the verdict should be for defendant.

APPEAL from Walker Law and Equity Court.

Heard before Hon. THOMAS L. SOWELL.

Action by Mary Duncan against the St. Louis & San Francisco Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

This was an action of damages for injury occasioned by being struck by an engine of the defendant. The facts are sufficiently set out in the opinion of the court. The case was tried on counts 4, 5, 8, and 9. Count 4 was wanton, willful, or intentional misconduct. Count 5, after alleging the defendant was a corporation operating a railroad, etc., in the town of Cordova, and that plaintiff was in the act of crossing a track of the railroad operated by defendant at a place where she had a right to cross, declares the defendant's servants, after dis-

covering the danger of injury to plaintiff and her perilous situation, failed to exercise due care and diligence to avoid injuring her. Count 6 alleges a failure of defendant's servants to keep a lookout at said point in order to discover persons who might be crossing the track. Count 8 is practically the same as 5. Count 9 sets out the facts stated in the opinion in reference to the number of inhabitants in the town, the popularity of the crossing, the situation of the tracks in reference to the mills and other parts of the town, and that in utter disregard for the safety of persons passing at that point, and without giving any signal of approach or maintaining a lookout, willfully, wantonly, etc., propelled an engine against plaintiff.

The charge set out in the opinion is charge No. 3. Charge 6: "I charge you that, under the pleading and evidence in this case, the defendant was under no duty to run its train at such rate of speed while approaching the paths crossing the track, so that the train could be stopped before reaching the path if a person was discovered on the track at this place." Charge 5: "I charge you that unless you believe from the evidence that the engineer discovered plaintiff's position of danger on the track in time to avoid the injury, and then neglected to do everything that would likely or probably prevent the injury, and that the engineer was conscious that his acts or omissions would likely or probably result in injury to the plaintiff, you must find for the defendant." Charge 7: "I charge you that an engineer in charge of a moving train has the right to presume that a person walking on the track towards the train will get off, and the engineer is under no duty to try to stop his train until he discovers that the person is not going to get off the track." Charge 8: "I charge you that the failure to blow the whistle after the engineer discovered plain-

tiff does not of itself constitute such negligence as will authorize a verdict for plaintiff." Charge 11: "In order to constitute willfulness or wantonness or reckless indifference to probable consequences, it is essential that that the act done or omitted should be done or omitted with a knowledge or a present consciousness that injury would probably result, and this consciousness is not to be implied from mere knowledge of the elements of the dangerous situation a party may have and yet act only negligently and inadvertently in respect of the peril." Charge 13: "If the failure to blow the whistle was a mere error of judgment, having no evil purpose or intent or consciousness of probable injury, and the failure to blow the whistle was the only negligence of the person in charge of the train, then you must find for defendant." Charge 15: "Unless you believe from the evidence that the engineer, after discovering the peril of plaintiff, did not in good faith exercise due diligence and care to prevent the injury, you must find for the defendant."

The defendants, by pleas 5 and 6, set up a payment to the defendant of a sum certain, and a release or remittitur of damages. The replications set up fraud and deceit in the procurement of the release, and that the $10 was not given as the release, but was a gift from an individual, which he did not know. In respect to this matter the following charges were given by the court at the request of the defendant: "(1) I charge you, if Mrs. Duncan knew before the suit was brought that the money was paid under the release offered in evidence, you must find for the defendant. (2) I charge you that, if you believe Mrs. Duncan made the settlement as claimed by the defendant, you have nothing to do with whether or not she was entitled to more money. If she made the settlement, she was bound by it. * * *

(9) Unless you are reasonably satisfied from the evidence that the money was a gift to Mrs. Duncan, you must find for the defendant. (10) If you are reasonably satisfied from the evidence that on the 3d day of November, 1904, defendant made a settlement with the plaintiff for the injury which is the basis of this suit, and paid her $10 in settlement of the claim, you must find for the defendant. * * * (12) If the $10 was paid to plaintiff in compromise for her injuries, you must find for the defendant."

RAY & LEITH, for appellant.—Where a person negligently exposes himself to injury upon a crossing where the railroad company has actually or impliedly invited the public to cross its tracks either by erecting the crossing itself or allowing such crossing to be erected by others for public use and allowing the general public to use it, the railroad company will be liable for injuries sustained by one using the crossing, if by the maintenance of a lookout it might has discovered the traveller in his exposed situation in time to have avoided killing or injuring him by the exercise of reasonable care.—2 Thompson on Negligence, §§ 1596-97; *Bir. Ry. L. & P. Co. v. Brantley,* 141 Ala. 619; *S. & N. Ala. Ry. Co. v. Sullivan,* 59 Ala. 272; *M. & C. R. R. Co. v. Womack,* 84 Ala. 149; *M. & C. R. R. Co. v. Martin,* 131 Ala. 269; *Central of Ga. Ry. Co. v. Lamb,* 124 Ala. 172; *Central of Ga. Ry. Co. v. Foshce,* 125 Ala. 199. It therefore follows that plaintiff's right of recovery was not dependent upon a willful or wanton injury, and that charges 1, 3, 4, and 7, requested by defendant, were properly refused. See *Frazer v. S. & N. Ala. Ry. Co.,* 81 Ala. 199; *L. & N. R. R. Co. v. Thornton,* 117 Ala. 281. Counsel discuss the charges given at the request of defendant.

BANKHEAD & BANKHEAD, for appellee.—The court properly sustained demurrers to the 6th count.—*Glass v. M. & C. R. R. Co.*, 94 Ala. 581; *Central of Ga. Ry. Co v. Foshee*, 125 Ala. 199; *G. & A. Ry. Co. v. Julian*, 133 Ala. 473; *L. & N. R. R. Co. v. Mitchell*, 134 Ala. 267. On the same authorities the court's action in reference to count 7 was proper. The court properly sustained demurrers to count 10. The facts stated therein do not constitute an invitation to cross.—*Womack's Case*, 84 Ala. 149; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 477. The facts stated fail to fix a liability on defendant.— *Martin v. M. & C. R. R. Co.*, 117 Ala. 367. Plaintiff made no offer to return the money.—*Harrison v. Ala. Mid. Ry. Co.*, 40 South. 394. Counsel discuss the charges given for the defendant.

DENSON, J.—The town of Cordova is a place of 2,500 inhabitants, and is located in Walker county. The defendant railroad company has a line of railroad running through said county and town. In said town defendant has what the witnesses term a transfer track, located between defendant's main line and that of the Southern Railway. This transfer track intersects defendant's main line on the northwest, and runs straight from that point in a southeasterly or southerly direction for nearly half a mile. Within a distance of 300 yards from said point of intersection there are three foot crossings on the transfer track; the third being about 300 yards from the point of intersection, in a southerly or southeasterly direction. In order to reach this crossing from the west, there is a steep embankment which must be descended, and there are several steps leading from the top of the embankment to the transfer track of the defendant; while on the east side of this track there is a footway, and a platform built of plank, leading out to

the main street on the east. These steps and the plat-
form have been there three or four years. The Indian
Head Cotton Mill, in said town, is situated west of the
track, and this transfer track passes through the center
of the town. As many as 500 or 600 people pass over
this crossing daily. It is used (as one of the witnesses
expressed it) "largely by the employes of the cotton mill
and the inhabitants of the town generally." It was not
shown on the trial who built the steps and platform at
the crossing. The plaintiff, a woman 75 years of age,
alleges that she was injured by one of defendant's loco-
motives running against her as she was passing over
defendant's track at said crossing; and she seeks to re-
cover damages for such injury.

The track was not in a street of the town. At least,
there is neither averment nor proof to that effect. If
the plaintiff was a trespasser, then the company owed
her no duty until its employes actually saw her on the
track in a place of danger. They were not bound to
keep a lookout for trespassers, and were not negligent in
failing to discover her on the track. This principle is
well settled in this and in other jurisdictions.—*Tanner's
Case,* 60 Ala. 621; *Carrington's Case,* 88 Ala. 476, 6
South. 910; *Bentley's Case,* 86 Ala. 484, 6 South. 37;
*Womack's Case,* 84 Ala. 149, 4 South. 618; *Blanton's
Case,* 84 Ala. 154, 4 South. 621; *Haley's Case,* 113 Ala.
648, 21 South. 357; *Glass' Case,* 94 Ala. 581, 10 South.
215; *Phila. & Reading R. R. Co. v. Hummell,* 44 Penn.
375, 84 Am. Dec. 457; *Masser v. Chicago, R. I. & P. R.
Co.,* 68 Iowa, 602, 27 N. W. 776; *Toomey v. Southern P.
R. Co.,* 24 Pas. 1074, 86 Cal. 374, 10 L. R. A. 139; *Spicer
v. Chesapeake & O. R. Co.,* 12 S. E. 553, 34 W. Va. 514,
11 L. R. A. 385; *Clark v. Wilmington & W. R. Co.,* 14 S.
E. 43, 109 N. C. 430, 14 L. R. A. E49; *Daniels v. New
York & N. E. R. Co.,* 28 N. E. 283, 154 Mass. 349, 13 L.

R. A. 248, 26 Am. St. Rep. 253. Plaintiff (appellant) contends that this should not be the rule, even as to trespassers, and Thompson on Negligence is cited as authority for the contention The contention may be supported by the authority cited; but such rule has been the uniform holding of this court, and, unless there appear cogent reasons for a departure therefrom, it should not now be changed. We have discovered no sufficient reason for changing the rule, and decline to overrule our many cases on the subject.

But there is another phase of this case. While the track of a railroad cannot be converted into a road for ordinary travel, and the mere usage or custom of crossing the track at any particular point does not give rise to the duty to keep a lookout, yet as said in *Savannah & Western Railroad Co. v. Meadors,* 95 Ala. 137, 140, 143, 10 South. 142: "When a railroad track runs through parts of a city, town, or village which are thickly populated, and where the demands of trade and public intercourse necessitates the frequent crossing of the track, it is the duty of those operating an engine along the track in such places to keep a lookout. This duty to keep a lookout for persons is not specially imposed by statute, but arises from the likelihood that in such places there are persons on the track, and the bounden duty to duly guard against inflicting death or injury in places and under circumstances where it is likely that injury may result unless care be observed. The duty arises when the circumstances exist which call for its exercise  *  *  * and when they are known to those operating the train." —*Nave v. A. G. S. R. Co.,* 96 Ala. 264, 11 South. 391; *L. & N. R. R. Co. v. Mitchell,* 134 Ala. 261, 32 South. 735; *Haley's Case,* 113 Ala. 640, 21 South. 357. We are of the opinion that the evidence shows that the crossing where defendant was struck by the engine was such a

place as made it the duty of the defendant's servants to keep a lookout for persons who might be crossing.

The record shows that, after the evidence was introduced, the plaintiff withdrew "all the counts of the complaint except counts 4, 5, 8, and 9." In this state of the record, plaintiff (appellant) has waived a review of the rulings of the court sustaining demurrers to the other counts.

The plaintiff introduced two witnesses who testified, substantially, that the engine, with two or three cars attached, was approaching the "crossing" at a speed of about 12 or 15 miles an hour; that the engineer was in his place and appeared to be looking straight ahead, and that the fireman was shoveling coal; that, just before the engine reached the point where plaintiff was, witnesses turned their heads momentarily, and did not see the engine strike the plaintiff; that they looked back instantly, and saw the plaintiff, on her feet and knees, in a "scrambling" position, about 8 or 10 feet from the ties; that no bell was rung or whistle blown when the engine was approaching the point where plaintiff was crossing the transfer track, and there was nothing to obstruct the view of the engineer of the steps and of the crossing where plaintiff was injured. On cross-examination one of the witnesses testified that he was not absolutely certain with respect to the blowing of the whistle or the ringing of the bell, "but to his best recollection it was not done." One of the witnesses (Quillian) testified that when he saw the engine it was only a few feet away from the plaintiff and "bearing down on her." The plaintiff, in her own behalf, testified that she was crossing the track at the foot crossing, and was going from the Indian Head Mills; that "from the top of the steps, and all the way down, and on the track, the engine and cars which struck her would have been in plain view, but she

did not look in that direction before going on the track, being so near the end of the transfer track, but that she did look in a southern direction along the track (the evidence as to the direction in which the engine was going was in conflict) ; that she did not hear any noise made by a train in running, neither did she hear any whistle or bell, and knew nothing of the approach of the engine until she was struck and knocked off the track on the east side; that she was at the time of the trial 76 years old."

As was said in the case of *Peters v. Southern Railway Co.*, 135 Ala. 533, 538, 33 South. 333 : "While the plaintiff had the right to cross the track along a private footpath without becoming a trespasser in so doing, yet this right was one to be exercised with due care. It must be conceded that if, in the exercise of this right in crossing, he had failed to stop, look, and listen for an approaching train, he would have been guilty of negligence in such failure, and for any injury received as a proximate consequence thereof there could be no recovery, except for wanton or willful misconduct on the part of the defendant or its agents."—*Ga. Pac. Ry. Co. v. Lee*, 92 Ala. 262, 9 South. 230; *L. & N. R. R. Co. v. Richards, Adm'r*, 100 Ala. 365, 13 South. 944; *Kansas City, M. & B. R. R. Co. v. Weeks*, 135 Ala. 615, 34 South. 16; *Glass' Case*, 94 Ala. 587, 10 South. 215; *Memphis & Charleston R. R. Co. v. Martin*, 117 Ala. 367, 23 South. 231; Id., 131 Ala. 269, 30 South. 827. Applying the doctrine of "stop, look, and listen" to the undisputed evidence in the case, we are of the opinion that no reasonable conclusion can be reached other than that the plaintiff was guilty of negligence in going on the track.

The fourth count of the complaint charges an intentional injury, or one committed wantonly or willfully. Doubtless the plaintiff intended that the ninth count

should be one for intentional, willful, or wanton misconduct, and the trial court seems to have treated it as such. But it is apparent that it falls short, in its averments, of being sufficient as a count charging willful or wanton injury.—*Louisville & Nashville R. R. Co. v. Brown,* 121 Ala. 221, 25 South. 609; *Louisville & Nashville R. R. Co. v. Mitchell,* 134 Ala. 261, 32 South. 735; *Montgomery Street Railway Co. v. Lewis,* 148 Ala. 134, 41 South. 736.

By counts 5 and 8 the case presents the doctrine, well settled in this court, that "where the injured party is negligent in assuming a position of danger, in such degree and so contributing to his hurt as that his fault will leave him without a right of recovery for any primary negligence of the other party, by which we mean any negligence which has, from the point of view of the person inflicting the injury, no relation to the other party's situation, yet he may nevertheless recover if the person charged with the wrong and injury became aware of his peril in time to avoid injuring him by the proper use of all preventive means at his command, and lislessly, inadvertently, or negligently failed to resort to such means in conservation of his safety, provided he is himself free from negligence after he becomes conscious of his danger. In such case the original negligence of the injured party, whereby he is placed in a perilous position, does not in a legal sense contribute to the result. It is a remote, not a proximate, cause. It is a condition, indeed, rather than a cause, remote or proximate, and the law ascribes the disaster solely to a want of due care on the part of the person controlling the agency of the injury, but for whose negligence no hurt would have been done notwithstanding the injured party's original fault."—*L. & N. R. R. Co. v. Brown,* 121 Ala. 221, 25

9 R

South. 609, and cases there cited; *Central of Georgia Railway Co. v. Lamb,* 124 Ala. 172, 26 South. 969; *Central of Georgia Railway Co. v. Partridge,* 136 Ala. 587, 34 South. 927; *Birmingham Railway, Light & Power Co. v. Brantley,* 141 Ala. 614, 619, 37 South. 698, and cases there cited. Under this doctrine, if the evidence comes up to its requirements, recovery may be had upon a count charging simple negligence. In other words, a count for wanton, willful, or intentional injury is not necessary.—*Lamb's Case, supra.*

The engineer testified that his "engine was used on the transfer track in transferring cars; that while standing on said transfer track, his engine headed nothwest, with two or three cars attached, he saw an old woman near the top of the steps described by plaintiff's witness Walker, coming down in the direction of the track; that he started his engine and cars in that direction slowly, supposing that she would stop or cross over the track; that he saw that she was old and feeble, and he checked his train up, causing it to go very slowly, thinking she would get off; that his engine was headed northwest, which was upgrade, and that he went very slow, at the rate of two or three miles an hour; that the woman finally stepped off the track on the east side, which was the dangerous side, it being steep on that side; that she had a bundle and umbrella, and as she went by the engine struck the umbrella or bundle; that he did not think the engine struck the woman; that he saw it jerk her around, but his best recollection was that she did not fall down, and he passed on without stopping. On cross-examination he testified that he could have stopped his engine easily, as it was going upgrade, with only two or three cars, at the rate of only two or three miles an hour; that he saw the woman on the track was old and feeble, and that the east side of the track where she crossed was

steep and narrow; that he could have avoided striking the woman by stopping." On the whole evidence, we are of the opinion that, applying the doctrine above adverted to, it was a jury question as to whether the plaintiff's negligence proximately contributed to her injury.—*A. G. S. R. R. Co. v. Guest,* 136 Ala. 348-353, 34 South. 968; *Memphis & Charleston R. R. Co. v. Martin, Adm'r,* 131 Ala. 269, 278, 279, 30 South. 827, and authorities there cited; *L. & N. R. R. Co. v. Webb,* 97 Ala. 310, 12 South. 374.

At the written request of the defendant the court charged the jury that "the defendant was under no duty to blow the whistle while approaching the path across the track, where plaintiff entered upon the track." This charge, under the evidence, at least invades the province of the jury, and should have been refused. And this criticism is applicable alike to given charge 6.—*Ga. Pac. Ry. Co. v. Lee,* 92 Ala. 262, 9 South. 230; *Meadors' Case,* 95 Ala. 137, 10 South. 141; *Foshee's Case,* 125 Ala. 218, 27 South. 1006; *A. G. S. R. R. Co. v. Guest,* 136 Ala. 348, 352, 353, 34 South. 968; *Central of Georgia Railway Co. v. Partridge,* 136 Ala. 587, 34 South. 927.

"Consciousness" as hypothesized in charge 5 given at the request of the defendant, is an element of wantonness; but we have in this discussion shown that, under one phase of the case, wantonness is not indispensable to plaintiff's right of recovery. Therefore this charge should have been refused.—*Birmingham Railway, Light & Power Co. v. Brantley,* 141 Ala. 614, 619, 37 South. 698; *Lamb's Case,* 124 Ala. 172, 26 South. 969.

Charge 7, given for the defendant, is abstract. There is no evidence in the record which tends to show that the plaintiff was "walking on the track towards the train." For this reason the charge might well have been refused.

Charge 8 is subject to the criticism we have applied

[Duncan v. St. Louis & San Francisco Railroad Company.]

to charges 3 and 6 given at defendant's request.   Furthermore, it gives undue prominence to a single feature of the evidence, and assumes that failure to blow the whistle was the only act of negligence.—*Montgomery Street Railway Co. v. Rice,* 142 Ala. 674, 38 South. 857; *Orr's Case,* 121 Ala. 504, 26 South. 35 (charge 33).

Charge 11, as shown by the amendment to the bill of exceptions, seems to be in accord with the utterances of this court found in the case of *L. & N. R. R. Co. v. Brown,* 121 Ala. 221, 226, 25 South. 609.

Charge 13 should have been refused.  It calls for a verdict for the defendant, notwithstanding the jury may have found that the failure to blow the whistle occurred after the engineer discovered the perilous position of the plaintiff, and which failure the jury may have inferred was the proximate cause of plaintiff's injury.

The giving of charge 14 is not insisted on as error in brief of appellant's counsel.

Charge 15, under the principles heretofore discussed in respect to negligence vel non on the part of the engineer after he discovered the perilous situation of plaintiff, is clearly bad, and should have been refused.

We have disposed of all questions that arose in the case in respect to negligence; but there remains another feature of the case for consideration.  The defendant, by pleas 5 and 6, set up a settlement and release.  Demurrers to the pleas were overruled, and the judgment of the court overruling the demurrers has been assigned as error; but there is no insistence on the assignment in brief of appellant's counsel, and we shall omit consideration of this assignment.

Several special replications were filed to pleas 5 and 6, all of which, however, were withdrawn, except those numbered 1, 3, 4, and 5, respectively.  The only questions to be determined in respect to this feature of the

case are presented by charges given at the request of the defendant.

Charge 1 should have been refused, as under the issues made by the replications the question sought to be presented by the charge was not in the case. But, as to the sufficiency of the replication, see *Harrison v. Alabama Midland Railway Co.,* 144 Ala. 246, 40 South. 394.

The testimony offered by the defendant tended to show that a settlement was fairly made with the plaintiff, and that after full explanation and understanding of its terms the plaintiff executed the release offered in evidence. In the light of this evidence, we can see no defect in given charge 2. Appellant insists that it is bad, because it does not "predicate" the jury's belief on or from the evidence. This insistence is not well founded.—*Hall v. Posey,* 79 Ala. 84; *Mansfield v. Morgan,* 140 Ala. 567, 37 South. 393.

Charges 9, 10, and 12, given at the request of the defendant, ignore the question of fraud in the procurement of the release, and should have been refused.

For the errors pointed out, the judgment of the trial court must be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and HARALSON and DOWDELL, JJ., concur.