133 So.2d 29

TERMINAL TRANSPORT CO.

v.

CENTRAL OF GEORGIA RAILWAY.

Sam SHELNUTT

v.

CENTRAL OF GEORGIA RAILWAY.

6 Div. 345, 346.

Supreme Court of Alabama.

Sept. 14, 1961.

Jack Paden, of Berkowitz, Lefkovits & Paden, Birmingham, for appellants.

Sadler, Sadler, Sullivan & Herring, Birmingham, for appellee.

**496**

LIVINGSTON, Chief Justice.

The Terminal Transport Company sued the Central of Georgia Railway for damages to its tractor trailer and cargo. Sam Shelnutt, the agent or servant of Terminal Transport Company, the driver of said tractor trailer, also sued the Central of Georgia Railway for personal injuries received at the same time and place.

As last amended, each complaint contained two counts; one for simple negligence, and the other based on wanton misconduct. To each count in each complaint, the Central of Georgia Railway interposed a plea in short by consent of the general issue and contributory negligence, etc.

By agreement of the parties, the two cases were consolidated and tried on the same evidence. Both cases are presented for review here on one record. After the plaintiffs rested, the court gave the general charge without hypothesis for the defendant in each case. The defendant in the court below did not offer any evidence. The plaintiffs appealed.

The appellee's freight train collided with the Terminal Transport Company's tractor trailer on 18th Street, at or near where it intersects 21st Avenue North, in the City of Birmingham, Alabama. Sam Shelnutt was the driver of the tractor trailer at the time, and he was acting within the line and scope of his authority as servant or agent of the Terminal Transport Company.

The tractor trailer had been loaded with approximately sixteen tons of structural steel shapes at the Industrial Steel Company, which is located at 2000 North 18th Street, in the City of Birmingham. The tractor trailer weighed eleven tons and was 35 feet in length. Shelnutt drove the loaded tractor trailer into 20th Avenue North and then turned left in the direction of 18th Street. He stopped at the entrance of 18th Street and turned left into said 18th Street and proceeded in a northerly direction. North 18th Street is 40 feet wide, and from the point where Shelnutt entered North 18th Street, said street is straight and level to the point where the train and tractor trailer collided. The distance from the point where Shelnutt entered North 18th Street to the point of collision is some 350 feet. After turning north on 18th Street, Shelnutt increased the speed of the tractor trailer to about 10 miles per hour.

There are three sets of tracks crossing 18th Street where the collision occurred. The point of impact occurred on the center track and in the center of 18th Street. The distance from the south rail of the south tracks to the north rail of the north tracks is approximately 20 feet. At the time of the collision, the south tracks were being used for storage purposes, a cut of gondolas being parked to the east of the intersection at a distance of 32 feet from the east curb line of 18th Street. A second cut of gondolas was parked on the same track to the west of the intersection, a distance of 59 feet from the west curb line of 18th Street. Twenty-first Avenue North extends east and west parallel to and south of the tracks. A row of Negro houses fronts on 18th Street on the west side thereof. Other

Negro houses front on 21st Avenue North, east of 18th Street.

The visibility of a motorist to the west is restricted to the immediate crossing until he is within 45 feet of the crossing and clear of the Negro houses. On the east side of 18th Street, and to the motorist's right as he is approaching the tracks going north, the property is vacant, consisting of an open field.

The collision occurred on March 16, 1956, after 4:00 p. m. and prior to 4:25 p. m. The tractor trailer was traveling at about 7 miles per hour when hit by the locomotive. The crossing where the collision occurred is not on a marked truck route through the city. There was a standard railroad cross-arm sign located 12 feet south of 21st Avenue North.

Admittedly, Shelnutt did not stop, look and listen before proceeding across the railroad tracks. The tractor trailer was cut into two parts, the tractor and front part of the trailer coming to rest on the north side of the crossing, and the rear part of the trailer coming to rest on the south side of the crossing. The locomotive and train traveled a distance of 164 feet beyond the crossing to the east after the impact.

Witnesses testified that 18th Street at the point of the collision was heavily traveled between the hours of 4:00 p. m. and 5:00 p. m. on a normal week day. A witness estimated that the speed of the train immediately after the collision was 25 to 30 miles per hour. Witnesses also testified that they did not hear the locomotive whistle blow or the bell ring.

The trial court gave the general affirmative charge for the defendant as to the simple negligence counts on the theory that the failure of Shelnutt to stop, look and listen before he went onto the railroad tracks was, as a matter of law, contributory negligence. The trial court gave the general affirmative charge as to the wanton counts on the theory that there was no proof as to the identity of the engineer in charge of the locomotive, that he knew or was conscious of existing conditions, that he knew this was a frequently-used crossing, or that he had ever passed there before, or at that time of day.

We hold that the trial court correctly gave the general affirmative charges in both cases.

■ The evidence is without dispute that plaintiff failed to stop, look and listen before he drove upon the track, and this constitutes contributory negligence as a matter of law, and is a bar to any recovery resting upon defendant's initial negligence. Bason v. Alabama Great Southern R. Co., 179 Ala. 299, 60 So. 922; Central of Georgia R. Co. v. Pope, 221 Ala. 145, 127 So. 835; Atlantic Coast Line R. Co. v. Jones, 202 Ala. 222, 80 So. 44; Southern Ry. Co. v. Hale, 222 Ala. 489, 133 So. 8; Gulf, Mobile & Ohio R. Co. v. Sanders, 255 Ala. 386, 51 So.2d 531; Louisville & N. R. Co. v. Johns, 258 Ala. 440, 63 So.2d 574; Gulf, Mobile & Ohio R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449.

There is no evidence from which the jury could find for appellants on the theory of subsequent negligence on the part of the servants or agents of the appellee; nor is the evidence sufficient to submit to the jury the issue of proximate causation. Allman v. Beam, ante, p. 110, 130 So.2d 194.

■ We come now to the contention of appellants that the trial court erred in giving the general affirmative charge for the appellee with respect to appellants' count charging wanton misconduct.

As regards wantonness, it has been held that:

"* * * the facts must show that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act, or omitted some known duty, which produced the injury. * * *" Peters v. South-

ern Railway Co., 135 Ala. 533, 33 So. 332, 333.

In the case of Dorough v. Alabama Great Southern R. Co., 221 Ala. 305, 128 So. 602, it was said:

"There was evidence tending to show that the crossing at which the collision occurred is a populous and much frequented crossing at the hour the accident occurred, and that the train approached said crossing on a curve, without signals of its approach, running twenty miles per hour. There is an absence of evidence showing or tending to show that the defendant's servants engaged in operating said locomotive had notice or knowledge of the crossing and the frequency of its use, facts essential to the imputation of wantonness. * * *"

There are many cases in this jurisdiction in which the same rule has been applied, but we will be content with the citation of some of them. Southern Railway Co. v. Randle, 221 Ala. 435, 128 So. 894; Lambert v. Southern Ry Co., 214 Ala. 438, 108 So. 255; Louisville & N. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191; Alabama Great Southern Railroad Co. v. Smith, 196 Ala. 77, 71 So. 455; Memphis & Charleston Railroad Co. v. Martin, 117 Ala. 367, 23 So. 231; Central of Georgia Railway Co. v. Foshee, 125 Ala. 199, 27 So. 1006.

The appellants rely mainly on Central of Georgia v. Partridge, 136 Ala. 587, 588, 34 So. 927, 929, to sustain their argument. It was there said:

"It is insisted that the engineer of defendant is not shown to have known of the conditions at the crossing, and, therefore, his conduct cannot be said to have been wanton or willful. A railroad company would be grossly negligent to place an engineer in charge of a train who was not familiar with the run, and it will not be inferred or presumed it did so. This inference or presumption, as bearing on the question whether the engineer knew of the con-

ditions at the crossing, is evidently matter proper for the consideration of the jury. 'It is presumed the master or the person placed in charge of a hazardous business or department thereof is familiar with the dangers, latent or patent, ordinarily accompanying the business he had in charge.' The master should inform the servant of the particular perils and dangers of the same. * * *"

The language, quoted above from the Partridge case, is, to say the least, confusing. The authorities cited to support it do so only by way of analogy, and, in our opinion, the rule applicable in the Partridge case and the rule of the supporting authorities are not the same. But be that as it may, if the Partridge case does support the argument here advanced, it has been clearly repudiated by later decisions of this Court.

Inasmuch as the general charge was properly given in each of the two cases involved in this record, we deem it unnecessary to discuss other designated assignments of error.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.